1  DAVID ANTON (SBN 94852)
2  1717 Redwood Lane
   Davis, CA 95616
3  Telephone: (530) 759-8421
   davidantonlaw@gmail.com

4

5  Counsel for Qui Tam Relators
   Donald K. Wadsworth and Robert McLean

6

7  **SEALED**
   **BY COURT ORDER**

8

9  **UNITED STATES DISTRICT COURT**

10  **NORTHERN DISTRICT OF CALIFORNIA**

11

12  **THE UNITED STATES OF AMERICA ex rel. DONALD K. WADSWORTH and ROBERT McLEAN**

    Case No.   **CV   16   1107**

13

14        Plaintiff and Qui Tam Relators in Interest,

    **COMPLAINT FOR:**
    **FALSE CLAIMS ACT VIOLATION**
    **PURSUANT TO 31 U.S.C. §3729 et seq.,**

15        v.

16  **TETRA TECH EC, INC.;**
    **RADIOLOGICAL SURVEY &**
    **REMEDIATION SERVICES, LLC; IO**

    **[FILED UNDER SEAL - 31 USC §3730]**

17
    **ENVIRONMENTAL &**
18  **INFRASTRUCTURE INCORPORATED**

    **Jury Trial Demanded**

19
          Defendants.
20

21

22

23                          **PARTIES**

24        1.    Qui Tam Relator Donald K. Wadsworth (herein Wadsworth), is the

25  President and CEO of New World Environmental, Incorporated (herein New World).

26  Wadsworth is trained in and has college degrees pertaining to the testing and handling

27  of radioactive materials.  New World has been for years a company specializing the

28  remediation of contaminated buildings and areas, including the contamination by

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616

530-759-8421

1.

1    radioactive wastes.  New World has performed remediation services involving
2    radioactive wastes for private, public and military clients.  New World was initially
3    engaged directly by the United States Navy in the late 1990 and early 2000's to assist
4    in the evaluation of Hunters Point Naval Shipyard for contaminants, including
5    radioactive contamination.

6        2.    In the early years of the 2000's New World was requested by the United
7    States Navy and Tetra Tech EC, Inc. to be a sub-contractor for Tetra Tech EC, Inc. for
8    the remediation of Hunters Point Naval Shipyard for radiological surveys, screening,
9    sampling, testing and remediation.  New World invoked its Nuclear Regulatory
10   Agency license and was responsible to the Nuclear Regulatory Agency for the
11   radiological work and handling of radiological materials at Hunters Point while
12   operating under New World's license.

13       3.    In or about 2007, Tetra Tech EC, Inc. obtained and invoked its own
14   Nuclear Regulatory Agency license and became the responsible entity for the
15   radiological work and handling of radiological materials at Hunters Point.  New
16   World continued to operate as a sub-contractor for Tetra Tech EC, Inc. at Hunters
17   Point by providing Radiation Control Technicians (RCT), and a radiological
18   laboratory and laboratory personnel.  On or about 2009 New World no longer
19   provided Radiation Control Technicians to Tetra Tech EC, Inc., for other sub-
20   contractors, including Defendant Radiological Survey & Remediation Services, LLC
21   (herein RSRS) took over the function of supplying RCT personnel to Tetra Tech EC,
22   Inc.  On or about 2012, New World no longer provided the radiological laboratory to
23   Tetra Tech EC, Inc. at Hunters Point.

24       4.    New World was retained as a sub-contractor for Shaw Environmental and
25   Infrastructure (Shaw) to perform surveys, scanning, testing, and remediation of
26   radioactive materials at Treasure Island in the mid-2000's until approximately 2009.
27   New World was retained as a sub-contractor for Tetra Tech EC, Inc. to perform

28

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616

530-759-8421

FCA Complaint - US ex rel Wadsworth & McLean v Tetra Tech, Inc. et al.

1    surveys, scanning, testing, and remediation of radioactive materials at the Alameda

2    Naval Base also from the mid-2000's until approximately 2009.

3        5.    Relator Robert McLean (herein McLean) is an experienced and trained

4    Radiation Control Technician.  McLean was employed by New World for a short

5    period of time in the mid-2000's to work as an RCT at Hunters Point under the sub-

6    contract with Tetra Tech EC, Inc.  McLean was transferred to be the RCT Supervisor

7    at Treasure Island when New World obtained the sub-contract with Shaw.  McLean

8    discovered extensive radioactive material on Treasure Island that the Navy had

9    represented was not present on Treasure Island.  Over the period of time of McLean's

10   employment by New World at Treasure Island, McLean was subjected to extensive

11   radioactive exposure and his employment ceased due to the level of exposure McLean

12   incurred.

13       6.    Relators Wadsworth and McLean are original sources of the information

14   herein provided as defined by 31 USC Section 3730(e)(4)(B).  Relators of not aware

15   of the allegations or transactions which are material to this suit having been publically

16   disclosed as defined by 31 USC Section 3730(e)(4)(A) prior to the filing of this

17   action.  Prior to the filing of this action, the Relators have voluntarily disclosed to the

18   Government the information and that information is independent of the public

19   disclosures and materially adds to any publicly disclosed allegations or transactions

20   before filing this action under the False Claims Act.

21       7.    Relators Wadsworth and McLean, with the assistance of counsel, have

22   conducted investigations into the conduct of Tetra Tech EC, Inc., and others involved

23   in the radiological remediation for the Navy in the California Bay Area.  Relator

24   Wadsworth had concerns on behalf of the company New World to determine why

25   New World was shut off from further remediation work on the former Navy bases

26   despite having worked on the radiological remediation at all three sites during the

27   2000's.  Relator McLean had concerns that he was terminated from employment with

28   New World, and advised that he was ordered to be terminated at the direction of a

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616

530-759-8421

3.

Navy RASO official, and consulted with legal counsel. As a result of the inquiries by the Relators, individually, jointly, and with the assistance of counsel, the Relators have independent knowledge and information that has not been publically disclosed that is material to false claims made by the Defendants against the United States of America, and the United States Navy, as set forth herein.

7. Defendant Tetra Tech EC, Inc. is a corporation that has contracted with the United States Navy and the United States government to perform clean-up and remediation services of hazardous wastes, including radioactive materials, at the closed Hunters Point Naval Shipyard in San Francisco, the Treasure Island Naval base in San Francisco, and the Alameda Naval station in Alameda County, California. On information and belief, it is alleged that the principal business office of Tetra Tech EC, is located in California. Defendant Tetra Tech EC, Inc. is a wholly owned corporate subsidiary of Tetra Tech, Inc. Federal jurisdiction is based on this action being brought under the Federal False Claims Act, 31 USC Section 3729 et seq.

8. Radiological Survey & Remediation Services, LLC (herein RSRS) is a limited liability corporation owned by Daryl DeLong and Brian Henderson. RSRS was a newly formed corporation by DeLong and Henderson in approximately 2006, and incorporated the company in Nevada. DeLong and Henderson had been employees of New World providing services to Tetra Tech EC, Inc. and the United States Navy at Hunters Point. After RSRS was created the company provided technical workers and performed services related to the radiological remediation for the United States Navy at Hunters Point, Treasure Island, and Alameda Naval station. Many of the employees of RSRS were prior New World employees who were advised would be without a job at Hunters Point when Tetra Tech EC, Inc. reduced the staffing or eliminated the staffing by New World. RSRS provided these services generally through sub-contracts with the prime contractors of the United States Navy, including Tetra Tec EC, Inc., the Shaw Group, and Chicago Bridge and Iron, Inc.

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616

530-759-6421

4.

FCA Complaint - US ex rel Wadsworth & McLean v Tetra Tech, Inc. et al.

9.     Shaw Environmental and Infrastructure, which was a subsidiary of The Shaw Group, was a corporation that contracted with the United States Navy and the United States government to perform clean-up and remediation services of hazardous wastes, including radioactive materials, at the closed Hunters Point Naval Shipyard in San Francisco, the Treasure Island Naval base in San Francisco, and the Alameda Naval station in Alameda County, California.  The Shaw Group was purchased by Chicago Bridge and Iron, Inc., and is a wholly owned subsidiary of Chicago Bridge and Iron, Inc.

10.     Defendant IO Environmental & Infrastructure Incorporated (herein IOEI) is a sub-chapter S corporation that was incorporated in 2006.  Defendant IOEI has provided data management, radiological test result management, and technical writing to Tetra Tech EC, Inc. for Hunters Point, Treasure Island, and Alameda Naval Base.

## FALSE CLAIMS ACT FACTS AND CLAIMS UNDER
## §3729 (a) (1)(A), (B), and (C)

**Hunters Point Naval Shipyard Conspiracy Between Tetra Tech EC, Inc. and Sub-contractors IOEI and RSRS To Generate False Radiological Records and Statements Material To False Claims Made To The Navy**

11.     The prime contractor with the Navy for the remediation of Hunters Point Naval Shipyard as of 2006 was Tetra Tech EC, Inc. Tetra Tech EC, Inc. installed a new General Manager over the Hunters Point Naval Shipyard, William "Bill" Dougherty (herein Dougherty) on or about 2006.  Dougherty on behalf of Tetra Tech EC, Inc. engaged in a conspiracy with the principles of Radiological Survey & Remediation Services LLC (herein RSRS), namely Brian Henderson and Daryl

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616

530-759-8421

FCA Complaint - US ex rel Wadsworth & McLean v Tetra Tech, Inc. et al.

Delong, and with Mike Bilodeau who formed in 2006 IO Environmental & Infrastructure Incorporated (herein IOEI) to defraud the United States Navy and related agencies regarding the remediation services and accomplishments at Hunters Point in order to obtain unearned payments from the Navy.  Under the remediation contracts with the Navy a change in the form of the contracts took place over the mid-to-late 2000's.  Early stage contracts for remediation services were for surveys to identify the location and characterization of potential radioactive wastes were billed and paid largely on a time and material cost nature.  In the later-half of the 2000's as the Navy contracts evolved and changed to focus on testing and remediation of radioactive wastes the contracts evolved to be more of a fixed price nature to the contract and included progress and completion requirements of radiological remediation objectives to obtain scheduled payments under the contracts from the later 2000's onward.

12.     Tetra Tech EC, Inc. management, particularly Dougherty, Dennis McWade, and Andy Bolt, cultivated sub-contractor companies to supply specialized manpower in a way to cause the sub-contractor to be indebted and coopted by Tetra Tech EC, Inc.  In 2006, Mike Bilodeau was a disabled veteran who was supplying drinking water to Hunters Point because standard utilities such a fresh water were not available to those working at Hunters Point.  Mr. Bilodeau was approached by managers of Tetra Tech EC, Inc. including Dougherty.  Dougherty offered to Mr. Bilodeau that if Mr. Bilodeau formed a Service-Disabled Veteran-Owned Small

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616
530-759-8421

6.

Business, and Bilodeau agreed to hire Mr. Dougherty's wife Christine Dougherty, that Dougherty would see that Mr. Bilodeau's company got the sub-contracted work from Tetra Tech EC, Inc. of providing Christine Dougherty to perform technical writing for submission of Tetra Tech EC, Inc. reports to the Navy and related governmental entities regarding the radiological remediation work at Hunters Point. Based on the arrangement proposed by Dougherty, Mr. Bilodeau did hire Christine Dougherty in approximately March of 2006, and incorporated IOEI in June of 2006, with Mr. Bilodeau taking the role of CEO of IOEI. Christine Dougherty was utilized in a variety of roles, including data management and oversight, and assisting in the technical writing of reports for Tetra Tech EC, Inc. to submit to the Navy to report progress and final results of radiological remediation services for specific areas on Hunters Point.

13.     In 2006, management officials of Tetra Tech EC, Inc., including Dougherty, approached Daryl DeLong and Brian Henderson about forming a separate company from New World to provide radiological support personnel and equipment to Tetra Tech EC, Inc. at Hunters Point and potentially other locations. Dougherty represented that he could and would take effective steps to channel sub-contract radiological work to the new company if formed, if DeLong and Henderson would cooperate with Tetra Tech EC, Inc. as needed to assure that Tetra Tech EC, Inc. made profits from the radiological work at Hunters Point and other locations they provided sub-contractor services. DeLong and Henderson agreed to cooperate with Tetra Tech

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616

530-758-8421

7.

FCA Complaint - US ex rel Wadsworth & McLean v Tetra Tech, Inc. et al.

EC, Inc. as needed and requested, formed RSRS, and provided to Tetra Tech EC, Inc. sub-contractor work by providing radiological support workers, RTCs, and radiological related equipment.

14.   In the summer and fall of 2008, building 351A, which had been one of the buildings on Hunters Point in which the Naval Radiological Defense Laboratory worked for a number of years with radioactive materials, was being processed for radiological remediation.  In the under floor foundation area of building 351A radiological material was surveyed and found to exist above release levels.  Extensive efforts and expense were incurred to have staff of approximately two dozen laborers work in the low clearance areas to remove soil and material that were potentially radioactive above release levels.  Significant expense was incurred by Tetra Tech EC, Inc. to have a specialized soil vacuum truck assist the laborers in the removal of the soil from the foundation crawl area of building 351A.  Significant expense was incurred by Tetra Tech EC, Inc. to have the removed soil evaluated, segregated, put in intermodal containers used for the removal of LLRW, and prepare the containers and material for review and approval from RASO and other government agencies to be delivered to LLRW approved facilities.

15.   Following the extensive remediation efforts of the laborers to remove radiologically impacted soils from the foundation area of building 351A, Radiological Control Technicians were directed to take soil samples from the remaining soil foundation area of building 351A, and deliver the soil samples to the on-site

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616

530-759-8421

8.

1   radiological laboratory at Hunters Point.  The RCT workers did take the post-

2   remediation soil samples per protocol, completed the proper chain of custody

3

4   documents, and delivered the post-remediation soil samples to the on-site radiological

5   laboratory.

6       16.    Approximately two days following the delivery of the post-remediation

7

8   soil samples to the on-site laboratory, an RSRS supervisor, Steve Rolfe, directed the

9   two RCT's who had taken the post-remediation soil samples and told the RCTs that

10

11  they were required to accompany him to a meeting at the headquarters of Tetra Tech

12  EC, Inc. at Hunters Point.  RSRS supervisor Rolfe took the two RCT's to the

13  conference room at Tetra Tech EC, Inc. headquarters where Tetra Tech EC, Inc.

14

15  General Manager Bill Dougherty along with other top Tetra Tech EC, Inc. managers

16  were present, as was RSRS Vice President Daryl DeLong.  In the meeting General

17  Manager Dougherty explained that Tetra Tech EC, Inc. had spent a great deal of

18

19  money on the remediation of building 351A.  Dougherty stated that the post-

20  remediation soil samples that the RCTs had taken and submitted to the on-site

21  laboratory had been tested and the test results were that the soil samples had some of

22

23  the highest radioactive readings that had ever been obtained at Hunters Point.

24  Dougherty explained that the laboratory results of the soil samples for building 351A

25  would be destroyed, and the soil samples would be gotten rid of so there was no

26

27  record or trace of the post-remediation samples that the RCTs had obtained from

28  building 351A.  Dougherty directed in the meeting that the RCTs were to go back to

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616

530-759-8421

9.

building 351A after RSRS and IOEI worked together to plot where samples would be taken under building 351A to avoid any samples being taken of building 351A's radioactive hot spots. RSRS and IOEI did further the conspiracy to defraud the Navy and United States Government by reviewing the scan and laboratory results, and plotting where scans and soil samples should be taken of the soil foundation area of building 351A to avoid radiological hot spots. The objective of Tetra Tech EC, Inc. management in giving the directive and the cooperative conspiracy of RSRS and IOEI was to take fraudulent steps so that the laboratory results and scans would support unrestricted radiological release of building 351A from Navy RASO and government agencies, and permit Tetra Tech EC, Inc. to bill and obtain payment from the United States based on the fraudulent records and designation of building 351A as meeting unrestricted radiological release standards. A short time after RSRS and IOEI plotted locations for building 351A's foundation soil area for sampling, the RCTs were instructed that RSRS and IOEI had directed engineers as to the placement of location flags under building 351A which were the spots that the RCTs were to take soil samples from and from no other locations under building 351A.

17.    The RCTs were aware of the areas under building 351A that had most likely resulted in the high radiological lab results because as part of the sampling process the RCTs were required to use survey instruments that measured for radioactivity. The RCTs noted that no location flags had been placed in the crawl area under building 351A that were near the spots that had registered the highest

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616

530-758-8421

FCA Complaint - US ex rel Wadsworth & McLean v Tetra Tech, Inc. et al.

1   radioactive readings the RCT's had obtained with their hand held radioactivity

2   sensors.

3

4          18.     The destruction of the building 351A soil samples and laboratory results,

5   and the direction and plan to only take soil samples from areas known to be low in

6   radioactive content, and to intentionally avoid areas of known high radioactive content

7   was directly contrary to the contract with the Navy, the operating procedures set by

8   the Navy to be followed as part of the contract, and was intentionally fraudulent.

9   Management and staff of RSRS and IOEI actively participated and assisted in carrying

10  out the conspiracy with Tetra Tech EC, Inc. to submit false records to the Navy as to

11  the radiological status of building 351A that were material to the claim for payment by

12  Tetra Tech EC, Inc. to the Navy.  RSRS and IOEI employees, including Daryl

13  DeLong of RSRS took steps to eliminate computer records of the soil samples that

14  had been taken, resulted in high radioactive readings, and had been discarded at the

15  direction of Dougherty as part of the efforts to defraud the United States.

16

17          19.     In later 2009 early 2010, and again through July 26, 2010 Tetra Tech EC,

18  Inc. submitted records of soil samples of the foundation area of building 351A to the

19  Navy's Radiological Affairs Support Office (RASO) for review and approval.  The

20  records submitted were knowingly false and in violation of rules, procedures and

21  required processes.  No disclosure was given that the soil samples were not taken in

22  compliance with requirements to sample both randomly and from the highest scan

23  reading area.  Tetra Tech EC, Inc. did not disclose the first post-remediation sample

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616
530-759-8421

11.

FCA Complaint - US ex rel Wadsworth & McLean v Tetra Tech, Inc. et al.

test results that exceeded Release Levels and demonstrated that there remained Low

Level Radiological Waste (LLRW) under building 351A. IOEI and RSRS worked in

conspiracy with Tetra Tech EC, Inc. in destroying record of the correctly obtained soil

samples that resulted in high radioactive readings above release levels, and worked in

conspiracy together to produce one or more Final Status Surveys for building 351A

that contained known false records and statements, and failed to disclose the existence

of the soil samples that had tested well above release levels established by the Navy.

Managers and employees of IOEI and RSRS knew of the fraud involved in the

destruction of soil samples and laboratory results that had been taken and resulted in

high radioactive readings above release levels. Defendants actively participated in the

fraudulent plan to substitute the high radioactive samples and test results with samples

and test results that were taken in a manner contrary to the rules and regulations for

the taking of such samples. Navy RASO and other agencies provide comments and

asked for further information, but did not learn of the fraudulent sample processes.

Tetra Tech EC, Inc. submitted a "Final, Final Status Survey Results for Building

351A, Hunters Point Shipyard, San Francisco, California dated July 26, 2010. On or

about October 6, 2010 Tetra Tech EC, Inc. received release for unrestricted use with

respect to radiological issues at Building 351A. Commensurate with the approval of

the fraudulent Final Status Survey for building 351A Tetra Tech EC, Inc. made a

demand for payment for the building 351A work. The fraudulent records and

statements were material to the false and fraudulent demand for payment. IOEI and

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616

530-759-8421

12.

RSRS managers and employees involved in the conspiracy knew and understood that the fraudulent Final Status Report would be utilized to make a demand for payment by Tetra Tech EC, Inc. to the United States.

20. Following the fraud involved in building 351A in 2009 and the first two-thirds of 2010, Tetra Tech EC, Inc. rewarded RSRS and IOEI and further bonded the three companies in the conspiracy to defraud the United States in various ways. Tetra Tech EC, Inc. directed greater portions of the radiological field work to RSRS and away from New World Environmental, Inc. and Aleut World Solutions, two sub-contractors who had been supplying radiological field work to Tetra Tech EC, Inc. at Hunters Point. Tetra Tech EC, Inc. began providing and increasing the work Tetra Tech EC, Inc. gave to RSRS at other military remediation projects where Tetra Tech EC, Inc. was the prime contractor with the United States, including but not limited to Alameda Naval Base and Treasure Island. Tetra Tech EC, Inc. rewarded IOEI for the assistance in the conspiracy to defraud the United States in the remediation at Hunters Point, and reinforced the conspiracy to defraud the United States by transferring employees of Tetra Tech EC, Inc. at Hunters Point to work for IOEI as employees of IOEI so that IOEI could bill for the employees' work and obtain the resulting overhead and profits. Tetra Tech EC, Inc. also provided benefits to IOEI by expanded the scope of services for IOEI to provide at Hunters Point that required the addition of staff and equipment by IOEI that IOEI billed for and obtain profits from, including the

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616
530-758-8421

13.

addition of data management individuals, technical writers, an archeologist, and laboratory assistance.

21.   In 2010, Tetra Tech EC, Inc., RSRS and IOEI furthered the conspiracy to create false records and documents to support false claims for payment to the United States. A fundamental function in the radiological surveys and remediation at Hunters Point was the scanning of buildings, trenches and areas to detect radiation. The contracts and terms of the contracts Tetra Tech EC, Inc. had with the Navy set forth very detailed and specific directives as to the manner in which radiological scans were to be taken. Further, the Navy in cooperation with other government agencies including California and San Francisco government agencies jointly established scan result levels that would trigger further investigation for radiological materials and potential need for radiological remediation of the radioactive sources. The conspiracy by the three Defendants included an agreement that areas of Hunters Point would be scanned, and reported, in a fraudulent manner so that the agreed upon areas would have end scan results that were reported to the Navy and regulators as readings below that which would have required further investigatory work and would allow for free radiological release for the building, soil, trench, or area.

22.   As part of the conspiracy to create false scan records and resulting reports, Tetra Tech EC, Inc. directed its field supervisors to falsify radiological scan results taken in the field, and to engage RSRS employees in assisting in the falsification of the radiological scan data. Tetra Tech EC, Inc. field supervisors,

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616
530-759-0421

14.

1   including Justin Hubbard and Steve Rolfe, reviewed the scan information obtained by

2

3   RCT's instruments by downloading the scan data from the field testing instruments.

4   The Tetra Tech EC, Inc. supervisors reviewed the field scan results in the connex

5   located in the designated areas being worked at Hunters Point.  The connex structures

6

7   were portable steel single rooms with a door and no windows.  Material could be

8   stored in a connex and employees could do work in the connex with computers and

9   paperwork.  In the connex the supervisors reviewed the scan information on a

10

11   computer.  The Tetra Tech EC, Inc. field supervisors themselves manually altered the

12   field scan results so that some of the data results falsely represented that the scans had

13   not detected radiological intensity levels that would warrant further study and

14

15   remediation.  The fraudulent change of this information enhanced the speed and

16   lessened the costs to Tetra Tech EC, Inc. in obtaining regulatory clearance of the area

17   and in obtaining payments from the United States.  The Tetra Tech EC, Inc. field

18

19   supervisors also directed RSRS employees to review the field instrument scan data on

20   the computer in the connex and had RSRS employees, including but not limited to Jeff

21   Rolfe, Tina Rolfe, Kathi Rolfe, Rick Zahinski, Joe Cunningham, Marie Winder, Jane

22

23   Taylor, Blake Willett, and Anthony Smith among others.  When scan data for areas

24   that Tetra Tech EC, Inc. management wanted to obtain clearance had field scan data

25   readings that were too high for clearance to be obtained, the RSRS employees were

26

27   directed to change the field scan data results on the computer.  Once the field scan

28   data was changed on the computer in the field connex, the data was then transferred

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616

530-759-8421

15.

onto the main computer systems at Hunters Point to avoid records of the changed data appearing on the main computer system. The false records of field scan data were knowingly false, and were material to claims submitted by Tetra Tech EC, Inc. to the United States for payment.  The falsification of scan data continued on a regular and frequent basis through at least the end of September 2012, and on information and belief it is alleged that the fraudulent changing of scan data continued thereafter.

23.    Tetra Tech EC, Inc., RSRS and IOEI furthered the conspiracy to defraud the United States in regards to the radiological scanning that was required to be performed at Hunters Point.  For areas that had been trenched, open areas and buildings that Tetra Tech EC, Inc. wished to have deemed free of radiological contamination above release levels, be it initially for buildings or open areas, or after radiological remediation work had been performed for trenches, open areas, or buildings, the Defendants in conspiracy took additional steps to obtain fraudulent scan data to support unrestricted release in addition to changing the scan results obtained. IOEI employees reviewed data obtained from prior surveys and characterization work that provided guidance as to where radioactive material likely was that would be above unrestricted release levels.  IOEI employees worked with Tetra Tech EC, Inc. supervisors, including Justin Hubbard and Jeff Rolfe, and with Daryl DeLong of RSRS to identify the areas of concern for potential high radiological readings that could thwart Tetra Tech EC, Inc. obtaining unrestricted release for a trench, an area or building.  The Tetra Tech EC, Inc. supervisors directed RSRS staff in the field

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616
530-759-8421

16.

performing the hand scanning of the areas of concern for potentially high radiological

readings and directed the RSRS field RCT to improperly scan by scanning at speeds

that exceeded Standard Operating Procedures set into the contract and agreements for

such scanning.  By scanning at speeds that exceeded the scanning speed protocols

established by the Navy in consultation with other government agencies involved with

Hunters Point, the radiological scanning instruments were dramatically less sensitive

and less able to register and record the radioactive levels actually present that could

have been detected by scanning at the prescribed scanning speed. Defendants

knowingly violating the scanning speed requirements set forth by the Navy from 2010

through no less than the end of September 2012, and Relators allege that the scanning

speed violations as a result of the conspiracy of Defendants continued thereafter.

24.     Tetra Tech EC, Inc., RSRS, and IOEI furthered the conspiracy to submit

false records and reports to the United States Navy to obtain payment for the

completion of work resulting in unrestricted radiological free release of soil extracted

from Hunters Point.  The conspiracy included the agreed upon objective of identifying

soils that were to be evaluated for radiological contamination that did not have such

high levels of other contaminants so that the soil could be used a backfill at Hunters

Point.  The costs to Tetra Tech EC, Inc. would be decreased if the amount of soil that

was dug up from Hunters Point could receive approval for free radiological release

and be used as backfill at Hunters Point rather than remediating the soil for

radiological waste, or be deemed unable to be fully remediated and the soil pad be

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616
530-759-8421

FCA Complaint - US ex rel Wadsworth & McLean v Tetra Tech, Inc. et al.

required to be processed and disposed of as LLRW.  By targeting the soils that did not have other contaminants that would preclude use as backfill, the soils when falsely cleared as free of radioactive contaminants above release levels could be backfilled at Hunters Point avoiding significant costs and completion time for Tetra Tech EC, Inc, and increasing the company's profits by fraud.  Soil that obtained radiological free release approval from the Navy did not have to be scanned and cleared by the Hunters Point portal monitor screening, increasing the potential of avoiding detection of the radiological waste above release levels that remained in the soil due to the fraud.

25.     In furtherance of the conspiracy, IOEI reviewed data related to the soils that were staged to be processed at the Radiological Screening Yards (RSY) which were approximately 1000 square meters each.  IOEI identified the soils that could be cleared for use at Hunters Point for backfill.  These soils were placed on the RSY pads, spread out, and scanned for radiological material using either hand held equipment or a towed array of sensors.  If from the initial scan obvious radiological contamination was identified, then that soil or portions of the soil were to be removed and placed in LLRW containers.  A towed array scan was taken again after the removal of identified LLRW and the resulting scan information was delivered electronically to IOEI employees.  A map of the RSY pad was created by the IOEI employees from the scanning information for the pad of soil that contained indications at to where higher readings of radioactivity in the soil were located.  IOEI employees conferred with RSRS employees and identified where the highest radioactive readings

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616

530-758-8421

18.

on the pad were, and identified the pad as one that was able to be backfilled at Hunters

Point.  IOEI employees provided this information so that the RSRS RCTs working

with laborers did not scan and take samples from the highest radioactive readings

from the towed array scan and mapping contrary to the contract and terms of the

agreement with the United States Navy.  Rather, as part of the conspiracy to cut cost

and increase profits for Tetra Tech EC, Inc., and to obtain greater work and profits for

RSRS and IOEI, scanning and soil samples were taken from points on the RSY soil

pad that were not of the highest radiological readings.  The scanning and taking of

samples was required by the Navy contracts and the directives related to the contracts

so that the samples were to be taken from the 18 radioactive readings for each unit or

soil pad.  The intentional identification of the highest radioactive towed array scan

results by IOEI in order to avoid taking hand scans and soil samples from the highest

radioactive reading spots was directly contrary to the contracts and related

requirements, was false, fraudulent, and created false records that were material to the

determination by the Navy RASO to approve of the soil being backfilled at Hunters

Point.  The false records created were material to the demand by Tetra Tech EC, Inc.

for payment from the Navy.  The conspiracy and conduct of Defendants in

fraudulently identifying the highest radioactive readings and then using that

information to avoid scanning and sampling from the high radioactive reading areas

on the RSY soil pads took place beginning at least by mid-2010 and continued

through 2012, and is alleged to have continued thereafter.

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616

530-759-6421

19.

26.     In furtherance of the conspiracy to create and submit false records so that Tetra Tech EC, Inc. could obtain free radiological release of buildings and soils at Hunters Point RSRS and Tetra Tech EC, Inc. engaged in manipulation of the samples that were submitted for radiological testing both at the on-site laboratory and those that were submitted to the third party laboratory selected by the Navy.  In addition to the fraudulent manipulation of soil samples reference supra, RSRS Vice President Daryl DeLong engaged in fraudulent activities to assure that soil samples delivered to the third party laboratory were not random samples, but were carefully reviewed by DeLong as an effort to lessen the potential that the third party laboratory results would result in above radiological release level laboratory results.  DeLong took steps to obtain the on-site lab results prior to sending samples to the third party lab, and DeLong blocked delivery to the third party lab if he determined from the lab result or any other information that it was a likely that an above release level would result.  Among the efforts by DeLong, he took active efforts to see that fully fraudulent soil samples obtained from areas other than as represented on the chain of custody documentation were delivered to the third party laboratory when final clearances were to be sought by Tetra Tech EC, Inc.  DeLong was aware that employees of RSRS were collecting false samples of material and soils and submitting such false samples to the laboratory, and DeLong worked with RSRS supervisors to assure that the false samples would result in laboratory results below release levels.  DeLong worked with employees of IOEI to review the history of initial scans of Hunters Point, and

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616

530-759-8421

20.

FCA Complaint - US ex rel Wadsworth & McLean v Tetra Tech, Inc. et al.

subsequent scanning for radiological wastes to identify areas on Hunters Point that soil could be obtained that were reasonably sure would have below release levels of radioactivity. DeLong worked with the RSRS supervisors to provide information as to potential areas to obtain soil from to use for fake sample to be submitted to the laboratory. DeLong tracked the submission of the faked soil samples to the on-site lab and to the outside lab, and took efforts to assure that the fake samples were those that went to the outside lab when they were available and being used to obtain final status survey free radiological release. DeLong also took efforts to oversee the strontium 90 samples sent to outside laboratories were carefully reviewed when Tetra Tech EC, Inc. wanted the soil or area at that time to be able to be cleared for free radiological release, and see that properly obtained samples that were likely to trigger strontium 90 radioactivity concerns that would result in extensive work were not sent to the outside laboratory contrary to the contract and procedures established by the Navy.

27.    Tetra Tech EC, Inc. and RSRS furthered the conspiracy to submit false records and commit fraud against the United States pertaining to the remediation at Hunters Point. Soils extracted from Hunters Point that contained contamination other and in addition to radiological wastes was not to be backfilled at Hunters Point under the contracts with the Navy. These extracted soils had to be processed at the RSY screening yards, given free radiological release status by Tetra Tech EC, Inc., with that status approved by the Navy after review of records, and then cleared through the portal monitor of radiological sensors before the truckload of soil was released from

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616

530-759-8421

21.

Hunters Point and allowed to be disposed of at a Class II landfill.  If the truckload of soil failed the portal monitor screening and also failed a post-portal monitor screening conducted by an RCT, then the soil had to be re-processed at the RSY pads or disposed of as LLRW, both at significant additional cost and time to Tetra Tech, EC.

28.    Tetra Tech EC, Inc. management, including Dougherty and Dennis McWade, and management of RSRS, including Daryl DeLong and Brian Henderson, in an effort to obtain free radiological release of soils to be shipped off Hunters Point and reduce costs and time for Tetra Tech EC, Inc. under the contracts with the Navy reached an agreement that employees of RSRS would be assigned to scan truckloads of soil that failed the portal monitor screening.  These Defendants agreed that RCT employees of RSRS would hand scan the truckload of soil that failed the portal monitor and conduct the scan at scanning speeds greater than set in directives from the Navy and at greater scanning distances from the truck bed to decease the potential of the radiological scanning instrument detecting radiation at an intensity above release levels.  From no later than the fall of 2010, RSRS employees assigned to perform the hand instrument scan of truckloads of soil that failed the portal monitor followed the directions of the conspiracy and scanned the truck beds at a faster rate than set by the Navy required standards, and scanned the truck bed at a distance greater than set by the Navy and established SOP.  As a result of the RSRS employees that performed the hand scan of trucks that failed the portal monitor from September 2010 on, very few trucks were scanned in a manner that could detect radiological emissions with the

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616

530-759-8421

22.

1   sensitivity that the Navy required under the contract and the SOPs that were

2
    incorporated into the contract.  Defendants certified and impliedly certified that the
3

4   testing and scanning of the truckloads of soil that left Hunters Point had been scanned

5   and tested according to standards, which was knowingly false.  The false records were

6
    incorporated into reports and Final Status Reports to the Navy that were material to
7

8   the demand for payment by Tetra Tech EC, Inc. to the Navy.

9

10
11  **Alameda Naval Base Conspiracy Between Tetra Tech EC, Inc. and Sub-**

12  **contractors RSRS Creating False Claims Pertaining to Radiological Remediation**

13

14      29.     Tetra Tech EC, Inc. and RSRS engaged in a conspiracy and concerted

15  action to submit false records to the Navy and the United States related to the

16
17  radiological remediation at the Alameda Naval Base.  RCTs performed scanning for

18  radioactive materials at the Alameda Naval Base.  Tetra Tech EC, Inc. took efforts,

19  and enlisted the assistance of RSRS, in avoiding the reporting of new spots in areas of

20
    units were the HRA conducted by the Navy indicated radionuclides of concern.  As
21

22  part of the effort to avoid the reporting of new spots of radionuclides that would

23  require scanning, testing, expensive remediation and delay for Tetra Tech EC, Inc.

24
    employees of RSRS took steps to eliminate the presence of radionuclides contrary to
25

26  the contracts with the Navy and the requirements set forth by the Navy as part of the

27  contracts.  For example, RCT technicians scanned and found high levels of

28

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616

530-758-8421

FCA Complaint - US ex rel Wadsworth & McLean v Tetra Tech, Inc. et al.

1   radionuclides in storm drains and similar areas that had not been previously identified

2   as having radionuclides present.  Upon RCT reporting of the findings RSRS staff,

3

4   with the knowledge of Tetra Tech EC, Inc. management and supervisors, high

5   pressure hosed the area until the radionuclides had been dislodged and swept away,

6   potentially into the San Francisco Bay.  The contracts and requirements between the

7

8   Navy and Tetra Tech EC, Inc. preclude conduct that would result in radionuclides

9   being disposed of in San Francisco Bay.  The contracts and requirements between the

10  Navy and Tetra Tech EC, Inc. provide strict structure and procedures as to how to

11

12  respond to and handle scan information of radionuclides of concern that could exceed

13  release levels.  The reports and requests for payment by Tetra Tech EC, Inc. certify

14  and impliedly certify that the information provided was correct, including disclosures

15

16  of conduct that did not comply with the requirements of the contract.  Tetra Tech EC,

17  Inc. and RSRS, a sub-contract agent of Tetra Tech EC, Inc., knowingly violated the

18  terms of the contract, and fraudulently reported that the processes followed at

19

20  Alameda Naval Base were strictly followed, and submitted reports as to the work in

21  the field and intentionally withheld information that Tetra Tech EC, Inc. and RSRS

22  violated the terms and conditions of the contracts, such as high pressure hosing areas

23

24  to dislodge radioactive material into additional areas and the Bay.

25      30.    The United States of America has been damages by the false claims

26  submitted by Defendants.  The United States of America contracted with Defendant

27

28  Tetra Tech EC, Inc. for the remediation and removal of radioactive materials above a

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616

530-759-0421

FCA Complaint - US ex rel Wadsworth & McLean v Tetra Tech, Inc. et al.

specified level for the health and safety of the environment, the public, and future generations. The fraudulent actions herein alleged deprives the United States of America with the basic service that was contracted for with Defendant Tetra Tech EC, Inc. The fraudulent conduct alleged related to radiological contamination creates unlimited future liability for the United State of America for the agreements between the United States of America and the City and County of San Francisco and government entities in Alameda County provide that the United States will remain responsible and liable for the radioactive remediation of Hunters Point, Treasure Island, and the Alameda Naval Base after the property is deeded over to local government agencies should it be discovered that the remediation did not fully and properly remove radioactivity. The Navy will and has incurred costs and expenses in the remediation of Hunters Point and Treasure Island that should not have been incurred, but for the fraud of Defendants. The full and extensive costs directly related to the fraud accomplished by Defendants are extensive and as of yet not fully known, and will be established and reasonably estimated at trial.

31.   Each false record and resulting false report to the Navy in support of a claim for payment is a false claim under 31 USC Section 3729(a) for which a civil penalty is required, and three times the amount of damages that the United States has and will sustain because of the acts of Defendants in submitting false claims.

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616

530-759-8421

25.

FCA Complaint - US ex rel Wadsworth & McLean v Tetra Tech, Inc. et al.

## PRAYER FOR RELIEF

32. Relators, on behalf of the United States of America and the United States Navy seek through this action 3 times the damages the government has and will sustain because of the acts of defendants;

33. Relators, on behalf of the United States of America and the United States Navy seek through this action a civil penalty as provide by 31 USC Section 3729(a)(1)(G) for each false claim and each false record or false statement material to a false claim;

34. For an award to the qui tam plaintiff as provided for by 31 USC Section 3730(d);

35. For an award of reasonable attorney fees and costs.

A jury trial is demanded.

Dated: March 3, 2016                          Law Office of David Anton

                                              By: _____
                                                     David C. Anton

FCA Complaint - US ex rel Wadsworth & McLean v Tetra Tech, Inc. et al.

DAVID ANTON
LAW OFFICE
1717 Redwood Lane
Davis, CA 95616

530-759-8421