DAVID ANTON (SBN 94852)
1717 Redwood Lane
Davis, CA 95616
Telephone: (530) 759-8421
davidantonlaw@gmail.com

Counsel for Qui Tam Relators
Donald Wadsworth and Robert McLean

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **THE UNITED STATES OF AMERICA ex rel., WADSWORTH, et al.,**<br><br>Plaintiffs and Qui Tam Relators in Interest,<br><br>v.<br><br>**TETRA TECH EC, INC., et al.,**<br><br>Defendants. | **Case No. 3:16-CV-01107-JD**<br><br>**RELATORS WADSWORTH'S AND McLEAN'S OPPOSITION TO TETRA TECH EC, INC.'S MOTION TO DISMISS RELATORS' COMPLIANT**<br><br>**Date: June 13, 2019**<br>**Time: 10:00 a.m.**<br>**Courtroom: 11, 19th Floor**<br>**Judge: Hon. James Donato** |

# TABLE OF CONTENTS

PAGE

I. Introduction To Opposition By Relators Wadsworth and McLean - Incorporation Of JAHR Opposition Arguments In This Opposition Being Heard Jointly By The Court..........................................................................1

II. Introduction To Facts Of RELATORS and RELATORS' Filing............................1

III. Prior JAHR FCA Suit Under Seal - Fundamental Different Material Facts...........2

    A. Conspiracy To Eliminate Records Of Samples Taken.................................3

    B. Conspiracy To Obtain and Report False Scan Results to Navy...................3

    C. Radiological Survey Yard Backfill Fraud Conspiracy..................................4

    D. On Site Laboratory and 3rd Party Lab Conspiracy Fraud............................4

    E. Radiological Survey Yard Fraud Conspiracy For Off-Site Disposal.............5

IV. Relators Smith, Wadsworth, and McLean Brought Information To The Government in 2015-2016 That Resulted In Further Investigations Of Tetra Tech That Found Evidence Of Massive Fraud As Reported By Relators........................................................................6

V. Argument..................................................................................................................7

A. RELATORS' Complaint Meets The Pleading Standards...........................................7

B. The Government's Complaint Supersedes Intervened Claims, Warranting Denial Of The Motion To Dismiss As Moot As To The Intervened Claims...............7

C. Relators' Complaint Is Operative For Non-Intervened Claims and Parties............8

D. The FCA Provides Litigation Controls As Well As The FRCP. Dismissal Of Valid Claims That Tetra Tech Defrauded The Navy Is Not Warranted By Hypothetical and Speculative Complexity In Litigation.......................................9

E. Tetra Tech's Claims That The U.S. Intervention Complaint Encompasses All Allegations of False Claims Related To Hunters Point Is Flat Out Wrong..............9

F. Smith's Claims Are Not Barred By The First To File Rule Under *Hartpence*.........9

G. Relators' Claims Are Not Barred By The "Public Disclosure Bar."......................12

LAW OFFICE OF DAVID ANTON
1717 REDWOOD LANE
DAVIS, CA 95616

## TABLE OF CONTENTS- CONTINUED

**PAGE**

**H.    Relators' Claims Are Not Barred By The NRC Proceedings**................................13

**I.    Relators' Claims Are Not Barred By The Statute Of Limitations**..........................13

**J.    Smith's Complaint Should Not Be Dismissed Based On Time Of Service**.................14

**IV.    Conclusion**................................................................................14

# TABLE OF AUTHORITIES

**PAGE**

*Supermail Cargo v. United States,*
68 F.3d 1204, 1206 (9th Cir. 1995)......................................................................................13

*U.S. v. Public Warehousing Co.,*
242 F.Supp.3d 1351, 1357-58 (N.D. GA 2017).....................................................................7

*U.S. ex rel. Brooks v. Stevens-Henager College,*
359 F.Supp.3d 1088 (D. Utah 2019).....................................................................................8

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys.,*
637 F.3d 1047, 1055 (9th Cir. 2011)......................................................................................7

*U.S. ex rel. Dresser v. Qualium Corp.,*
2016 WL 3880763 *10 (N.D. Cal. 2016)...............................................................................7

*U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.,*
792 F.3d 1121 (9th Cir. 2015)..........................................................................................9-12

*U.S. ex rel Hunt v. Conchise Consultancy, Inc.,*
887 F.3d 1081, 1096-1097 (11th Cir. 2018), *cert granted* Nov. 16, 2018.............................13

*U.S. ex rel. Hyatt v. Northrop Corp.,*
91 F.3d 1211 (9th Cir. 1996).................................................................................................14

*U.S. ex. rel. Johnson v. Shell Oil Co.,*
183 F.R.D. 204, 206-207 (E.D. Tex. 1998)............................................................................7

*U.S. ex rel. Moore & Co. v. Majestic Blue Fisheries, LLC.,*
812 F.3d 294 (9th. Cir. 2016)...............................................................................................12

*U.S. ex rel. Sansbury v. LB&B Assocs., Inc.,*
58 F.Supp.3d 37, 47 (D.D.C. 2014)....................................................................................7, 8

**Table of Authorities - Continued**                                                      **PAGE**

Statutes
31 USC §3729(a)(1)(C)..................................................................................9
31 USC §3730 (e)(4)(B)................................................................................12


Federal Rules of Civil Procedure

Fed. R. Civ. P. 8(a) ........................................................................................7

Fed. R. Civ. P. 9(b).........................................................................................7

Fed. R. Civ. P. 24(a)(1)...................................................................................7

I.  **Introduction To Opposition By Relators Wadsworth and McLean - Incorporation Of JAHR Opposition Arguments In This Opposition Being Heard Jointly By The Court.**

The Motion to Dismiss filed by Tetra Tech EC, Inc. and Tetra Tech, Inc, [jointly as "Tetra Tech"] raised identical issues and arguments in the *U.S. ex rel. JAHR v. TETRA TECH EC, INC. et al.,* 3:13-CV-03835 JD Motion to Dismiss before this Court on the same date and time. Also, identical issue are raised in the *U.S. ex rel. SMITH v. TETRA TECH EC, INC. et al, 3:16:CV-01106-JD* Motion to Dismiss also before this Court at the same date and time. Rather than repeat arguments articulated in the JAHR and SMITH Oppositions, Relators Donald Wadsworth and Robert McLean (herein jointly as "RELATORS") herein will incorporate by reference the argument(s) raised in the JAHR and SMITH Oppositions and will do so by specifically stating when such incorporation is made, and shall identify the page and line numbers of the JAHR Opposition or the SMITH Opposition for reference in italics and bold.

II.  **Introduction To Facts Of RELATORS and RELATORS' Filing**

Donald Wadsworth (Wadsworth) is extremely experienced in the field of radiological remediation and the processes of performing those services for the United State, particularly the Navy. Wadsworth had been during relevant times the president and CEO of New World Environmental (New World).[1] Initially the Navy engaged New World in radiological evaluation of Hunters Point Naval Shipyard ("Hunters Point") in the late 1990's to early 2000's. (Complaint ECF 1 (herein ECF 1, ¶1) In the early 2000's the Navy requested New World to be a sub-contractor to Tetra Tech for radiological services, using New World's Nuclear Regulatory Commission license. (ECF 1, ¶2.)

About 2007, Tetra Tech obtained and invoked its own Nuclear Regulatory Commission license, took over responsibility for the radiological processing and reporting effectively squeezing out Wadsworth's involvement. New World was limited to supplying Radiation Control Technicians (RCTs) and a radiological laboratory, but Tetra Tech managers and supervisors directed the work of these individuals and the lab. By 2009, Tetra Tech no longer supplied RCTs,

---

[1] New World Environmental is a named defendant in the JAHR case. New World Environmental has failed, closed and liquidated over a year ago. Wadsworth no longer holds any position with New World Environmental since the closing.

- 1 -                                   3:16-CV-01107-JD

Wadsworth- Opposition to Tetra Tech EC's Motion To Dismiss Relators' Complaint

and by 2012 Tetra Tech discontinued use of New World lab. (ECF 1, ¶3) New World in the 2000's provided radiological assistance at Treasure Island and Alameda Naval Base. (ECF 1, ¶4). Wadsworth had extensive understanding of the processes, requirements, and proper radiological remediation required under Navy contracts and standards.

Wadsworth had concerns regarding why New World was shut out of new sub-contracts for remediation work in the late 2000's. New sub-contracts went to others as of about 2008 at all Bay Area locations where New World had been providing services. Sub-contracts were provided to new inexperience companies IO Environmental & Infrastructure Incorporated (herein IOEI) and Radiological Survey & Remediation Services, LLC (herein "RSRS"). (ECF 1, ¶7)

Robert McLean (McLean) is an experienced RCT. New World employed McLean at Hunters Point as a RCT and thereafter transferred him as the RCT Supervisor at Treasure Island. McLean was subjected to radioactive exposure at Treasure Island and was terminated. (ECF 1, ¶5-6)

McLean and Wadsworth each had independent reasons to determine why it was that they were excluded from further radioactive remediation work, McLean personally, and Wadsworth on behalf of New World. McLean and Wadsworth, with the assistance of counsel conducted investigations into the conduct of Tetra Tech and others involved in radiological remediation in the Bay Area. The allegations in this complaint are the result of the independent personal knowledge of McLean and Wadsworth, and the information learned through their independent investigation. (ECF 1, ¶6-7)

**III.    Prior JAHR FCA Suit Under Seal - Fundamental Different Material Facts.**

RELATORS complaint alleges detailed, complex, and previously un-alleged conspiracies between Tetra Tech, RSRS, and IOEI to create false records and resulting reports from those false records to defraud the Navy. The conspiracy involved high level interactions between the top management of Tetra Tech at Hunters Point, RSRS, and IOEI. The conspiracy involved high level oversight of laboratory processing of samples so only fraudulent samples were sent to the outside third-party laboratory that was suppose to be a check on the on-site laboratory results and the reports developed for Navy approval.

The prior JAHR FCA complaint, 3:13-CV-03835-JD (herein "JAHR") alleged simple resumé fraud, timecard fraud, and soil sampling incompetence at the Survey Unit pads (also called the Radiological Survey Yard - or RSY). The JAHR soil sampling resulting in false claims alleged for Tetra Tech knew that individuals involved were incompetent, knew the sampling was defective due to the incompetence, and the improperly hired workers involved cut corners to reward Tetra Tech for their undeserved jobs. (JAHR ECF 1, 37-53).

The RELATORS complaint is materially different from the JAHR complaint in the following schemes:

### A.   Conspiracy To Eliminate Records Of Samples Taken.

In RELATORS' complaint, paragraphs 14-19, a conspiracy between all three defendants is described in detail how properly obtained samples were ordered destroyed, the conspirators destroyed computer records of the samples, conspired and directed the taking of fake samples, and worked together to submit records and reports to the Navy and regulators using the false lab and related reports. Following approval of the fake reports to the Navy, Tetra Tech demanded payment and was paid. (ECF 1, ¶14-19.) This conspiracy and the material elements are not contained in the JAHR complaint. Many material elements of this conspiracy are not contained in the SMITH complaint, 16-CV-01106-JD, herein "SMITH".

### B.   Conspiracy To Obtain and Report False Scan Results to Navy.

RELATORS' complaint, paragraphs 21-23, alleges a conspiracy in which Tetra Tech, RSRS, and IOEI top management worked together to have false radiological scan results submitted to the Navy to support claims for payment. The complaint alleges that RSRS and Tetra Tech management together gathered scan results from the field, RSRS helped identify high radioactive readings, and Tetra Tech supervisors, Rolfe and Hubbard, manually lowered scan data to eliminate high radiological readings. RELATORS allege Tetra Tech, RSRS, and IOEI worked together to identify areas with high radioactivity and directed that RCTs scan at excessive speeds in areas of trenches, buildings, and open areas. (ECF 1, ¶21-23.) The material elements of this FCA violation are not alleged in the JAHR complaint. Material elements of this conspiracy are not contained in the SMITH complaint.

LAW OFFICE OF DAVID ANTON
1717 REDWOOD LANE
DAVIS, CA 95616

### C. Radiological Survey Yard Backfill Fraud Conspiracy.

RELATORS allege in paragraphs 24-25 that radioactive soil without chemical contamination that need to be remediated in the RSY processing was the subject of conspiracy between Tetra Tech, IOEI and RSRS. Using soil as backfill at Hunters Point cut costs for Tetra Tech and increased profits. Soil without chemical contamination could be used for backfill once remediated of radioactivity. RSY soil samples were required to be taken from the 18 highest spots on the RSY pad. The defendants conspired and directed the RSRS employee to avoid the areas of high radioactivity in order to falsely obtain radioactive clearance and approval to use for backfill. These material allegations are not alleged in the JAHR or SMITH complaints.

The JAHR complaint does have allegations related to the RSY process. The JAHR allegations do not allege a conspiracy amount the three companies, and does not allege that there were orders to obtain soil samples contrary to Navy rules and regulations. Rather, the JAHR complaint alleges that due to the incompetence of the individuals involved at the RSY proper samples were not taken. The JAHR allegations are materially different, and would not alert the Navy investigation to the conspiracy Tetra Tech, RSRS, and IOEI engaged in to defraud the Navy. The SMITH complaint has no allegations regarding the RSY yard soil process.

### D. On Site Laboratory and 3rd Party Lab Conspiracy Fraud.

The RELATORS' complaint, paragraph 26, alleges that Tetra Tech, RSRS, and IOEI engaged in a conspiracy to manipulate the soil samples within the on-site laboratory and to the 3rd party laboratory that was to be a check on the on-site laboratory. The Complaint alleges that RSRS Vice President DeLong took efforts to defeat the Navy protocols that the 3rd party lab was to received "random" samples. It is alleged that Delong reviewed the samples to assure the samples would result in free radioactive release lab results, and DeLong blocked the delivery of "random" samples if he concluded the samples may be radioactively elevated. It is also alleged that DeLong took efforts to have fake samples used, with false chain of custody documents delivered to the 3rd party lab. It is alleged that DeLong worked with IOEI to review scan history to take steps to have samples taken from low radioactive areas, when Navy rules required samples from the highest radioactive reading spots to be assured all hazardous radioactivity was removed.

It is alleged that DeLong tracked the samples at Hunters Point to assure that the fake samples were those sent to the outside lab.

The material elements of the conspiracy by Defendants regarding the laboratory samples in RELATORS' complaint are not contained in the JAHR complaint. Material elements regarding the lab conspiracy are not contained in the SMITH complaint.

### E.     Radiological Survey Yard Fraud Conspiracy For Off-Site Disposal.

RELATORS allege at paragraphs 27-28 that Tetra Tech and RSRS conspired to falsely process soil through the Portal Monitor for soil that had radioactive contamination as well as chemical contamination. The costs of disposal of radioactive and chemically contaminated soil is markedly higher than soil that just has a chemical contamination. Most chemically contaminated soils may be disposed of in Class II landfills. Soils deemed low level radioactive waste with chemical contamination must be specially processed, manifested, and disposed of in federally licenses radioactive facilities, of which there are only 4, and the cost is significant. Early in 2005-2006 Tetra Tech had experienced significant costs due to the amount of chemically contaminated soils, that were also radioactive. As the SMITH complaint described, massive amounts of chemically contaminated soil with radioactive contaminates were experiences in the mid-2000's at the PCB Hot Spot. (SMITH ECF 14, ¶35-43.)

Afterwards, in 2010 onwards, RSRS and Tetra Tech engaged in a conspiracy so that chemically and radioactive contaminated soils would pass the Portal Monitor process that was designed by the Navy to prevent radioactive materials from leaving Hunters Point. RELATORS allege Tetra Tech and RSRS agreed that RSRS employees from 2010 onward would have trucks go through the Portal Monitor, and when the trucks alarmed the Portal Monitor, RSRS employees would hand scan the truck load at excessive speeds and excessive distances from the truck load and give false clearance for the load to leave as non-radioactive. (ECF 1, ¶27-28.)

The JAHR complaint does contain allegations regarding the Portal Monitor process which are materially different than the RELATORS' complaint. The JAHR allegations focused on the Portal Monitor are ¶¶52, 57-61. (JAHR ECF 1.) Paragraph 52 focuses on the concept that trucks with soil leaving Hunters Point were failing the Portal Monitor radioactive sensor testing, so Tetra

Tech should have known that soil used as backfill, that did not go through the Portal Monitor, would also still have radioactive contamination after the RSY process. Paragraphs 57-61 describe changes in formal Portal Monitor process, such as the setting of the sensors being relaxed from 3 to 8 sigma, discontinued use of scaffold that stopped over the top scanning of trucks, and the use of one RCT rather than two RCTs. The JAHR complaint is devoid of the material elements that top management conspired and directed RCTs to scan too fast and scan at too great a distance to give a truck final clearance after the Portal Monitor had alarmed. The SMITH complaint has not Portal Monitor allegations.

### IV.   Relators Smith, Wadsworth, and McLean Brought Information To The Government in 2015-2016 That Resulted In Further Investigations Of Tetra Tech That Found Evidence Of Massive Fraud As Reported By Relators.

Wadsworth had personal contacts with the government over the issues herein raised, and both Wadsworth and McLean provided the U.S. Attorney General representatives disclosures prior to filing suit in 2016. ECF 1, ¶6. As a result of these disclosures the Navy conducted investigations into alleged fraud by Tetra Tech EC. The Navy's "Fact Sheet Hunters Point Naval Shipyard Radiological Data Review" stated:

> "In 2016, former workers at HPNS made new claims about Tetra Tech EC activities, including the following:
> *   Potentially contaminated soil samples were swapped for clean soil samples:
> *   Potentially contaminated soil was placed into open trenches in other areas around HPNS:
> *   Misrepresented data reports were prepared and submitted to the government; and
> *   Computer data regarding radiation levels was tampered with to indicate lower levels of radiation."
>
> [See, RJN Ex. A, Navy "Fact Sheet"]

**(RELATORS HEREIN INCORPORATE SMITH OPPOSITION AT PAGES 5:23-6:23.)**

///

## V. Argument

### A. RELATORS' Complaint Meets The Pleading Standards

RELATORS' complaint does meet both the Fed. R. Civ. P. 8(a) and 9(b) pleading standards, for the complaint sets forth the who, what, when, where, and how specifics of the misconduct as well as how the statements are false. *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys.,* 637 F.3d 1047, 1055 (9th Cir. 2011). The frauds alleged by RELATORS involve many false claims, spanning years, and due to this extensive scheme and time "the requirements of Rule 9(b) are less stringently applied." *U.S. ex rel. Johnson v. Shell Oil Co.,* 183 F.R.D. 204, 206-207 (E.D. Tex. 1998) [collecting cases]. If the Court find the allegations regarding Alameda Naval Base warrant additional detail leave should be granted to amend rather than dismissal with prejudice as requested by Tetra Tech.

### B. The Government's Complaint Supersedes Intervened Claims, Warranting Denial Of The Motion To Dismiss As Moot As To The Intervened Claims.

The RELATORS' Complaint is the initial complaint. The Government's Complaint is a Complaint in Intervention. Federal Rules of Civil Procedure (FRCP) 24(a)(1) provides for complaints in intervention by the government when permitted by statute. The Government's complaint supersedes RELATORS' complaint on intervened claims. The RELATORS' complaint remains the operative complaint on non-intervened claims. It is the appropriate step for the motion to dismiss to be denied as moot as to the government intervened claims. *See, U.S. v. Public Warehousing Co.,* 242 F.Supp.3d 1351, 1357-58 (N.D. GA 2017); *U.S. ex rel. Sansbury v. LB&B Assocs., Inc.,* 58 F.Supp.3d 37, 47 (D.D.C. 2014); *U.S. ex rel. Dresser v. Qualium Corp.,* 2016 WL 3880763 *10 (N.D. Cal. 2016).

The Government's Complaint In Intervention has intervened in the claims for Hunters Point against Tetra Tech set forth in RELATORS' paragraphs 11-28 related to Hunters Point, but the Government's complaint has not listed RSRS or IOEI as defendants. The claims against RSRS

LAW OFFICE OF DAVID ANTON
1717 REDWOOD LANE
DAVIS, CA 95616

and IOEI in paragraphs 11-28 have not been intervened in, along with the Alameda Naval Base claims, and are not superseded by the Government's complaint.

C.     **Relators' Complaint Is Operative For Non-Intervened Claims and Parties.**

All courts, save one, provide that Relator remains in the case to pursue non-intervened claims and parties. *U.S. ex rel. Sansbury v. LB&B Assocs., Inc., supra, 5*8 F.Supp.3d 37, 47-48 ("However, a relator's initial complaint continues to be the operative complaint for all non-intervened claims and relators remain a party to the Government's intervened claims and continue to have rights to participate in those claims under 31 U.S.C. §3730(c)(1)....") .

***Relator incorporates here by reference the Argument discussion related to the non-intervened claims contained in the JAHR Opposition filed concurrently and is found on section III B. "The Relators' Complaint In Operative For Non-Intervened Claims", from page 2:25-8:2 of the JAHR Opposition. The following is text specific to the unique Smith facts.***

The *U.S. ex rel. Brooks v. Stevens-Henager College,* 359 F.Supp.3d 1088 (D. Utah 2019) ("*Brooks")* decision, if followed, may result in situations like this court presently faces, that Tetra Tech attempts to take a second form of advantage of to the detriment of the United States. If *Brooks* is followed counsel for relators who discover multi-issue, multi-defendant frauds upon the government could conclude that multiple False Claims Act (FCA) lawsuits should be filed, each listing only one of the issues and one defendant so that if the government does not intervene the claim can go forward rather than be dismissed under the holding of *Brooks*. For reasons unrelated to *Brooks,* two suits, this one and the SMITH case were filed involving Hunters Point, Treasure Island, and Alameda Naval Base radiological remediation fraud. These two suit, RELATORS' and SMITH'S, involve multiple defendants, and multiple fraud schemes to defraud the Navy in nearly every conceivable manner. *Brooks* would compel counsel to consider filing multiple cases

to avoid non-intervention dismissal, but would cause those cases to face challenges of first-to-file and public disclosure, all to the detriment of the effectiveness of the FCA.

**D.  The FCA Provides Litigation Controls As Well As The FRCP. Dismissal Of Valid Claims That Tetra Tech Defrauded The Navy Is Not Warranted By Hypothetical and Speculative Complexity In Litigation.**

***Relators incorporates the JAHR Argument Section C at ECF #66, page 8:3-9:13***. There are rules to address harassment, complexity, and delays. These are not a basis for dismissal now.

**E.  Tetra Tech's Claims That The U.S. Intervention Complaint Encompasses All Allegations of False Claims Related To Hunters Point Is Flat Out Wrong.**

Relators' complaint is primarily a complaint of conspiracy. The U.S. Complaint in Intervention does not allege conspiracy. The U.S. Complaint does not list RSRS and IOEI as defendants. Tetra Tech's position that the U.S. Complaint "covers all allegations" made unlawful by the FCA fails to acknowledge that the FCA specifically provides for liability to engage in a conspiracy.  31 USC §3729(a)(1)(C).

**F.  Smith's Claims Are Not Barred By The First To File Rule Under *Hartpence*.**

The Ninth Circuit addressed the "First-to-File Bar" in *U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.,* 792 F.3d 1121 (9th Cir. 2015) and articulated standards for determining whether the bar should be applied or not to a later filed FCA case involving the same defendant and related claims. The *Hartpence* decision established two specific standards, both of which result in the First-to-File Bar not being applicable. The explicit first standard is to determine whether the two complaints involve the "same material elements" for the claim or not. *Id. p. 1130-1131.* In *Hartpence,* the Court noted the two lawsuits involved the same defendant, similar time, billing practices, billing codes, and shared many of the same paragraphs of their lawsuits. However, the Ninth Circuit noted differences regarding the material facts, such as use of different modifiers to the codes, different Medicare requirements, and different program elements at issue mandate no First-To-File application. *Id.*

RELATORS' FCA case is different in the material elements of the claims compared to the prior *JAHR* case as set forth supra, in **Section III, A, B, C, D, and E.** As the Ninth Circuit made crystal clear, it is not enough that the complaints have allegations against a similar defendant, at a similar time, involve a similar government program, and that similar people or departments are engaged in submitting false reports. Rather, the *"materials elements"* of each of the claims must be determined and determined if they are **each** substantially similar. As **Section III A-E,** supra, demonstrated by carefully comparing the actual allegations and elements of this Complaint with the *JAHR* allegations, the material elements and the facts to support those material elements are different as to each of the claims listed in **Section III A-E.** Tetra Tech's motion glosses over and generalizes rather than examines the actual specifics of the two lawsuits, contrary to the teachings of *Hartpence* on "material elements".

This RELATORS' suit also meets the **second** stated *Hartpence* exception to the First-To-File bar, namely does the suit "provide additional benefit to the government." *Id.* p.1131-1132. Tetra Tech's motion ignores this exception to the First-To-File Bar in *Hartpence,* apparently because it is so easily met by RELATORS' suit. This RELATORS' suit provides additional benefit to the government in a host of ways. First, this suit provided specific, direct information on how and why these three conspiring defendants went about defrauding the government in ways that the *JAHR* and *SMITH* complaints did not. Details are provided regarding destruction of soil samples and records (¶14-16) and how these three companies worked together to create false soil sample records in a way that would not leave an obvious trail (¶18), and how Defendants developed false reports that fooled the Navy and regulators (¶19). Relators' suit provided beneficial information to the government on the conspiracy to direct false scanning of buildings, trenches, and areas by scanning too fast, changing scan data, and IOEI plotting where to scan to avoid radioactive areas. (¶¶21-23) The government got none of this from the *JAHR* suit. The

*SMITH* suit did contain limited information on this area largely limited to false scanning of buildings, but none for trenches and open areas which were the majority of the contracted work at Hunters Point.

This Relators' suit also provide the additional benefit to the government in regards to the RSY yards, both in regard to the soil fraudulently used as backfill at Hunters Point, and soil fraudulently shipped off Hunters Point. (¶24-25, 27-28) This RELATORS' suit provide the government with significant detail as to how the Defendants went about the RSY frauds, and the scope of the soils impacted by that fraud. The *JAHR* and *SMITH* suits did not provide this guidance to the government, and enabled the government to understand and expand the scope of their investigations into the Hunters Point frauds.

This Relators' suit also "provided additional benefit to the government" per *Hartpence, supra,* by providing real detail on how the conspiracy impacted the on-site laboratory and the samples sent to the off-site laboratory. (¶26) By providing detail and information about the conspiracy to manipulate the samples for these two labs, the government was notified of the falsification of samples tested in the labs, especially how and why for the samples sent to the off-site lab that was suppose to be a cross-check on the process. The *JAHR* and *SMITH* complaints did not provide these benefits that RELATORS' suit did for the government in regards to the laboratory frauds.

The government has also spoken that these reports have "provided additional benefit to the government." The Navy wrote in its public "Fact Sheet" quoted above in more detail in Section IV: "In 2016, former workers at HPNS made new claims about Tetra Tech EC activities" and then listed four critical areas that these whistleblowers assisted the government in understanding the scope of the fraud upon the Navy. (See, RJN, Ex. A "Fact Sheet", and Ex. B

"Fact Sheet #3", describing frauds uncovered as a result.] The RELATORS also benefited the government by identifying the nature and extent of RSRS and IOEI in the conspiracy.

Under *Hartpence, supra,* the Relators' complaint is not subject to the First-To-File Bar. The motion must be denied as to First-To-File Bar.[2]

**G.     Relators' Claims Are Not Barred By The "Public Disclosure Bar."**

The Public-Disclosure-Bar contains an exception to its application for a person or persons who qualifies as an "original source". 31 USC §3730 (e)(4)(B). Wadsworth and McLean each qualify as an original source as defined by the current statute, which applies to this case. Tetra Tech's motion cites only cases that use the out-dated statutory definition, which is not appropriate for analysis. In *U.S. ex rel. Moore & Co. v. Majestic Blue Fisheries, LLC.,* 812 F.3d 294 (9th Cir. 2016) ["*Majestic"*] the court addressed the new statutory definition for "original source" and stated that the:

> "language has radically changed the "hurdle" for relators...The salient question is no longer whether the relator has 'direct and independent knowledge' of the information on which the allegations in the complaint are based. (cite) Rather, the original source status now turns on whether the relator has 'knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions." (cite) Significantly, a relator no longer must possess 'direct...knowledge' of the fraud to qualify as an original source."
> *Majestic, supra,* p.299.

Tetra Tech's motion uses an old, rejected standard. RELATORS' complaint alleged knowledge independent of any public disclosure and has alleged in the suit specific information that had never before been publicly disclosed. (Frauds involved in Building 351A processing ¶14-19; building scan conspiracy frauds ¶22-23; fraud to have radioactive soils backfilled to avoid

---

[2] The *Smith* complaint and the *Wadsworth/Mclean* complaint were submitted in person, at the same time and place for filing. The request was for the complaint to be filed at the same time. The clerk's employee explained the office was unable to physically file the two complaints at the same time. See, Declaration of David C. Anton, ¶ 2. If the *Hartpence* First-To-File exceptions do not apply to Relators' complaint, Relators request leave to amend to state these facts on this first impression issue for the two complaints were presented and sought to be filed at the exact same time, but precluded by court processes, as these facts may relate to the First-To-File Bar.

costs ¶24-25; manipulation of on-site and off-site labs ¶26). Relators' knowledge is independent of public disclosures, and materially adds to the public disclosures that had taken place. *Id.* RELATORS are original sources under the current FCA.

Wadsworth and McLean voluntarily provided information and disclosure to the government prior to suit. RELATORS had no legal duty to report conduct that took place while they were not employed at Hunters Point. (ECF 1, ¶6).

McLean and Wadsworth are each an "original source" under the relevant statutory definition, and the "Public Disclosure Bar does not apply to RELATORS' lawsuit.

**H.     Relators' Claims Are Not Barred By The NRC Proceedings.**

*Wadsworth and McLean incorporate by reference the "government action bar" discussion set forth in the JAHR Opposition found at page 14:22-15:3 in the Jahr Opposition.*

**I.     Relators' Claims Are Not Barred By The Statute Of Limitations.**

The violation is the act of billing to the Navy seeking payment on fraudulent conduct. The dates of the billings are not set forth by Tetra Tech. Defendant bears the burden to prove there is no set of facts that would establish a timely suit. *Supermail Cargo v. United States,* 68 F.3d 1204, 1206 (9th Cir. 1995). The complaint alleges a host of matters within the 6-year period. There is a split in the circuits as to whether the section (2) tolling up to 10 years applies to a relator such as Wadsworth and McLean, so 10 years would apply to all of the Relators' claims which begin in 2007. That issue is currently before the US Supreme Court in *U.S. ex rel Hunt v. Conchise Consultancy, Inc.,* 887 F.3d 1081, 1096-1097 (11th Cir. 2018), *cert granted* Nov. 16, 2018, and argued March 19, 2019. If the *Conchise* 11th Circuit holding is adopted by the Supreme Court, all of claims will be within the ten-year period.

Wadsworth- Opposition to Tetra Tech EC's Motion To Dismiss Relators' Complaint

LAW OFFICE OF DAVID ANTON
1717 REDWOOD LANE
DAVIS, CA 95616

The Ninth Circuit is one of the Circuit decisions that has created the split. In *U.S. ex rel. Hyatt v. Northrop Corp.,* 91 F.3d 1211 (9th Cir. 1996), the court noted it "would be unfair to bar a fraud action as untimely where the defendant successfully concealed the fraud ...during the limitations period." *Id.* p. 1216. the Ninth Circuit concluded that the 3-year tolling provision of the FCA in 31 USC §3731(B)(2) applied to relators, so the relators got the benefit of both (1) and (2). Here, McLean and Wadsworth allegations assert that as a result of their investigations, with the assistance of counsel, from 2014 to filing in early 2016, that period of time was when they learned of information as to the frauds alleged. The three-year tolling period applies to Relators, and their claims are all timely as within the 10-year period under the Ninth Circuit holding of *Northrop, Id.* at p. 1214-1218.

Because Tetra Tech has failed to meet its burden to prove the statute of limitations applies to any billing to the Navy, that numerous claims clearly are timely under any view of §3731(b), and the Supreme Court should resolve the issue of the 10 year tolling within a few months in the *Conchise* decision, the statute of limitations argument should be denied at this time.

**J.    Smith's Complaint Should Not Be Dismissed Based On Time Of Service.**

*Relators incorporates by reference the JAHR argument section "H The Jahr Complaint Should Not Be Dismissed Based On Time Of Service" at page 15:6-14* for service was pursued together.

**IV.    Conclusion**

For the foregoing reasons it is respectfully requested that the motion to dismiss be denied in its entirety, and if not, that Relators Wadsworth and McLean be granted leave to amend.

May 10, 2019

                                                ___/s/ David C. Anton_____
Attorney for Relator
Relators Donald Wadsworth
and Robert McLean