**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* JAHR, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>TETRA TECH EC, INC., *et al*,<br><br>Defendants. | **JOINT STATUS CONFERENCE STATEMENT**<br><br>**Assigned to Hon. Judge James Donato**<br><br>Case No. 3:13-cv-03835-JD; 3:16-cv-1106-JD; 3:16-cv-1107-JD |
| UNITED STATES OF AMERICA, *ex rel.* MCLAUGHLIN,<br><br>Plaintiffs,<br><br>v.<br><br>SHAW ENVIRONMENTAL & INFRASTRUCTURE, INC., et al,<br><br>Defendants. | Case No. 3:14-cv-01509-JD |
| LINDA PARKER PENNINGTON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TETRA TECH EC, INC., *et al*,<br><br>Defendants. | Case No. 3:18-cv-05330-JD |
| BAYVIEW HUNTERS POINT RESIDENTS, *et al.*,<br><br>Plaintiffs, | Case No. 3:19-cv-01417-JD |

| | |
|---|---|
| v.<br><br>TETRA TECH EC, INC., *et al*,<br><br>Defendants. | |
| KEVIN ABBEY, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>TETRA TECH EC, INC., *et al.*,<br><br>Defendants. | Case No. 3:19-cv-7510-JD |
| CPHP DEVELOPMENT, LP, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>TETRA TECH EC, INC., *et al.*,<br><br>Defendants. | Case No. 3:20-cv-1485-JD |
| FIVE POINT HOLDINGS, LLP, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>Defendants. | Case No. 3:20-cv-1480-JD |
| FIVE POINT HOLDINGS, LLP, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>TETRA TECH EC, INC., *et al.*,<br><br>Defendants. | Case No. 3:20-cv-1481-JD |
| TETRA TECH EC, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CH2M HILL, INC., *et al.*,<br><br>Defendants. | Case No. 3:20-cv-04704-JD |

The parties in the following cases, by and through their respective counsel of record, jointly submit this Joint Status Conference Statement pursuant to this Court's June 21, 2023 Order and in advance of the September 7, 2023 status conference for the FCA Cases, the Parcel A Cases, the Building 606 Case, the Residents' Case, and the Commercial Cases, which terms are defined as follows:

"**FCA Cases**" are: *US ex rel. Jahr et al. v. Tetra Tech EC, Inc. et al.*, Case No. 3:13-cv-3835-JD ("*Jahr*"); *US ex rel Smith v. Tetra Tech EC, Inc. et al.*, Case No. 3:16-cv-1106-JD; *US ex rel. Wadsworth et al. v. Tetra Tech EC, Inc. et al.*, Case No. 3:16-cv-1107-JD; and *US ex rel. McLaughlin v. Shaw Environmental & Infrastructure, Inc. et al.*, Case No. 14-cv-1509-JD ("*McLaughlin*").

"**Parcel A Cases**" are: *Pennington v. Tetra Tech et al.*, Case No. 3:18-cv-05330-JD; *Ellington v. Tetra Tech*, Case No. 3:18-cv-05352-JD; *Lin v. Tetra Tech et al.*, Case No. 3:18-cv-05771-JD; *Farrell v. Tetra Tech et al.*, Case No. 3:19-cv-00248-JD; *Yegorov v. Tetra Tech et al.*, Case No. 3:19-cv-00252-JD; *Darden v. Tetra Tech et al.*, Case No. 3:19-cv-00247-JD; *Fried v. Tetra Tech et al.*, Case No. 3:19-cv-00249-JD; *Lupton v. Tetra Tech et al.*, Case No. 3:19-cv-00251-JD; *Bravo v. Tetra Tech et al.*, Case No. 3:19-cv-00667-JD; *Carter v. Tetra Tech et al.*, Case No. 3:19-cv-02555-JD; *Hershowitz v. Tetra Tech et al.*, Case No. 3:19-cv-02698-JD; *Kaplan v. Tetra Tech et al.*, Case No. 3:19-cv-02740-JD; *Yun v. Tetra Tech et al.*, Case No. 3:19-cv-02771-JD; *Castro v. Tetra Tech et al.*, Case No. 3:19-cv-02810-JD; *Zhu v. Tetra Tech et al.*, Case No. 3:19-cv-03932-JD; *LaRrett v. Tetra Tech et al.*, Case No. 3:19-cv-03941-JD; *Chen v. Tetra Tech et al.*, Case No. 3:19-cv-03955-JD; *Yang v. Tetra Tech et al.*, Case No. 3:19-cv-03992-JD; *Datta v. Tetra Tech et al.*, Case No. 3:19-cv-05405-JD; *Duncan v. Tetra Tech et al.*, Case No. 3:19-cv-05408-JD; and *San Francisco Shipyard Residents v. Tetra Tech et al.*, Case No. 3:19-cv-06137-JD.

"**Building 606 Case**" is: *Kevin Abbey v. Tetra Tech, et al.*, Case No. 3:19-cv-07510-JD.

"**Residents' Case**" is: *Bayview Hunters Point Residents v. Tetra Tech et al.*, Case No.

3:19-cv-01417-JD.

"**Commercial Cases**" are: *Five Point Holdings v. USA*, Case No. 3:20-cv-01480-JD ("*Five Point v. U.S.*"); *Five Point Holdings v. Tetra Tech et al.*, Case No. 3:20-cv-01481-JD (*"Five Point v. Tetra Tech*"); *CPHP Development et al. v. Tetra Tech et al.*, Case No. 3:20-cv-01485-JD ("*CPHP*"); and *Tetra Tech EC, Inc., v. CH2M Hill, Inc., et al.,* Case No. 3:20-cv-04704-JD ("*CH2M*").

All Parties named in the above referenced cases (collectively, the "Actions") are referred to collectively as the "Parties" or in the singular as a "Party."

## I. UPDATE ON THE ACTIONS

The Parties have made substantial progress in the Actions. Listed below are notable recent and upcoming milestones.

First, on June 16, 2023, the Parties substantially completed document discovery. The Parties are currently reviewing the millions of documents produced.[1] On August 25, 2023, the Parties exchanged privilege logs. Tetra Tech Inc. and Tetra Tech EC, Inc. ("TtEC" and collectively with Tetra Tech Inc., the "Tetra Tech Defendants") have begun noticing and taking depositions. Specifically, thirteen depositions have been taken across the Actions to date. The Tetra Tech Defendants have taken five depositions in the Parcel A Cases, two in the Commercial Cases, two in the Residents' Case.

The Tetra Tech Defendants had noticed seven upcoming depositions in the FCA Cases (four of which were cross-noticed by Five Point to occur on business days consecutive to the dates noticed by Tetra Tech) – which were set to take place in September and October 2023. Due to the scope of the newly proposed CERCLA claim in *Jahr*, the Tetra Tech Defendants have continued four of those depositions, but intend to proceed with the remaining three as scheduled.

Five Point and Lennar have taken two non-merits stage depositions in the Residents' Case

[1] On August 16, 2023, the United States moved to amend its complaint (*Jahr.* Case No. 13-cv-03835, ECF 342). As more fully addressed in their opposition to that motion, it is the Tetra Tech Defendants' position that if leave to amend is granted, document discovery will need to be reopened.

and three in the Commercial Cases. Plaintiffs in the Residents' Case and Lennar also wish to jointly notify the court that they have continued mediation with the goal of reaching a settlement based on the Sixth Amended Complaint. Lennar did not oppose Plaintiffs' Motion to file an amended complaint (ECF 218) because the pleading addressed the concerns the Court expressed in denying Plaintiffs' motion for preliminary approval of a class action settlement (ECF 186) and more clearly delineated the claims against Lennar. Plaintiffs' complaint no longer lumps together Lennar and Tetra Tech where there was no factual basis to do so. Plaintiffs and Lennar will keep the Court updated on the progress of settlement talks.

## II. CASE MANAGEMENT ORDER

On February 2, 2023, the Court entered a Case Management Order and Stipulated Discovery Plan for these Actions ("CMO"). The CMO provides that Side 1 and Side 2 may each take 70 depositions of 7 hours each. The CMO also contemplates that Side 1 may notice the deposition of the same witness(es) noticed by Side 2, and vice versa. If both Sides notice a deposition of the same witness, the deposition shall run on consecutive business days until completed. However, the CMO does not address the circumstance where one Side notices a deposition of a witness and the other Side decides – after hearing that witness's deposition testimony – that it also wants to depose that witness. Accordingly, Plaintiffs in the Building 606 Case, Commercial Cases, Parcel A Cases, and Residents' Case request that the Court permit all depositions to be noticed to run on two consecutive business days so both Sides have the opportunity to depose each witness. If the non-noticing Side decides not to avail itself of the opportunity to depose on the second day a witness noticed by the other Side, the non-noticing Side shall advise the noticing Side and the witness of such as soon as that decision is made, at any time before the deposition or promptly after the conclusion of the first day of the deposition. In the case that non-noticing Side does not take the deposition on the second day, it shall not count against that side's allotted number of depositions.

TETRA TECH DEFENDANTS' AND THE UNITED STATES' POSITION:

Plaintiffs in the Building 606 Case, Commercial Cases, Parcel A Cases, and Residents'

Case have not met and conferred with the United States or the Tetra Tech Defendants regarding this new proposal, did not disclose the proposal until hours before the filing deadline for the CMC Statement (notwithstanding that they had a draft CMC Statement for two weeks prior), and thus the issue is not yet ripe. The United States and the Tetra Tech Defendants agree to meet and confer in good faith to discuss whether the proposal is feasible, but note in the first instance that the proposal would impose significant burdens on the many witnesses in this matter (including third party witnesses) who are not ultimately deposed for more than one day, rather than placing the burden on parties to make the determination of whether a deposition is likely to be needed in the first instance. The United States further notes that the language proposed in this late addition contradicts the language of the Court's CMO, which states, "If both Sides notice a deposition, the deposition shall run on consecutive business days until completed *unless the witness desires otherwise*, subject to the time limits herein" (emphasis added). This language places the decision about whether the deposition shall run on consecutive business days with the witness.

## III. <u>PENDING MOTIONS ON NON-DISCOVERY MATTERS</u>

The Parties have completed, or are near to completing, briefing on several motions:

In the <u>FCA Cases</u>, the *United States' Motion for Leave to File a Second Amended Complaint Pursuant to Federal Rule 15(a)(2)* was filed on August 16, 2023. Case No. 13-cv-03835, ECF 342. The Tetra Tech Defendants filed their Opposition on August 30, 2023. ECF 345. The United States' reply is due on September 6, 2023. A hearing is noticed for September 21, 2023. In addition, briefing is complete and taken under advisement in the FCA Cases on the *Motion to Dismiss Claims Against the Shaw Defendants in Relators' Combined Third Amended Complaint for Failure to State a Claim and Jurisdictional Grounds*, Case No. 13-cv-03835 ECF 296, the *Motion to Dismiss Relators' Combined Third Amended Complaint*, *id.* ECF 297, the *Motion to Strike Defendant's Affirmative Defenses*, *id.* ECF 324. These issues are ripe for Court resolution.

In *<u>McLaughlin</u>*, one of the FCA Cases, on June 28, 2022, the Court initially dismissed all defendants on first-to-file grounds and held, as a result, that defendants' other arguments for

dismissal were moot. However, on March 8, 2023, the Court reconsidered the first-to-file dismissal of the Shaw Defendants and reinstated the case. In so doing, the Court did not address the Shaw Defendants' other arguments for dismissal. After the Court's March 8, 2023 Order, the Shaw Defendants filed for leave to file a motion requesting the Court consider arguments raised in the Shaw Defendants' motion to dismiss that were previously held moot as a result of the first-to-file dismissal. (ECF 210). Relator responded (ECF 212), and the Shaw Defendants moved to strike the response. (ECF 214). Briefing on these issues was completed March 24, 2023, and these issues are ripe for Court resolution. The Court has also ordered the parties to submit briefing regarding whether *McLaughlin* should remain related to the other FCA Cases. Briefing was completed on March 16, 2023 (ECF 207, 208, & 209), and this issue is ripe for Court resolution.

In the Residents' Case, briefing is complete on the Tetra Tech Defendants' *Notice of Names of Non-Responding Plaintiffs and Request for Dismissal Without Prejudice*. *Id.* ECF 209.

In the Parcel A Cases, briefing will be complete as of October 27, 2023 on Plaintiffs' *Motion for Class Certification*. Case No. 18-cv-05330 ECF 265. A hearing on that Motion is set for November 16, 2023.

In the *CH2M* Case, Defendants CH2M Hill. Inc., Battelle Memorial Institute, Cabrera Service, Inc., Perma-Fix Environmental Services, Inc., and SC&A, Inc. anticipate filing an early joint motion for summary judgment.

The Parties anticipate filing additional dispositive motions, including early motions for summary judgment from the Tetra Tech Defendants. Finally, as requested in the Court's June 21 Order, the Parties have identified in Section IV the discrete discovery disputes that remain pending, which are listed below. As noted, several disputes have been resolved and require no further action by the Court.

## IV. PENDING DISCOVERY DISPUTES

### A. *Jahr*, 3:13-cv-03835-JD; May 3, 2023 Discovery letter brief filed by TtEC (ECF 335) [TtEC's RFAs to the United States]

The Parties agree that this dispute is resolved and may be marked as closed on the docket.

### B. *Jahr*, 3:13-cv-03835-JD; United States' RFP No. 25 to TtEC

### 1. The United States' Position

The United States and TtEC respectfully dispute TtEC's response to Request No. 25 of the United States' First Set of Requests for Production of Documents ("RFPs"), served on TtEC on August 11, 2020. RFP No. 25 seeks "[a]ll documents supporting any voucher, invoice, and progress report submitted to the government relating to payment under the Tetra Tech Contracts." On May 20, 2022, TtEC agreed to conduct a combination of e-discovery searches and review of relevant hard copy and electronic folders in response to this request. On June 5, 2023, TtEC notified the United States that it had located 54 bankers boxes in San Diego, California, containing "hard copy invoice files" — i.e., backup documents supporting the invoiced amounts on cost reimbursable task orders. These documents were not attached to the invoices sent to the United States during the course of work, but were instead retained by TtEC, and include weekly time sheets, individuals' expense reports, supplier invoices for materials Tetra Tech purchased from third parties, invoices for equipment rentals from third parties by Tetra Tech, and subcontractor invoices. These documents have not been produced in any other format.

In its June 5, 2023 letter an in subsequent discussions, TtEC declined to scan and upload these hard copy invoice files to the parties' Magna database. Instead, it has offered only to make these 54 bankers boxes available to the United States for inspection and/or copying in San Diego, California, "contingent on agreement that: (1) all costs associated with the inspection and/or copying of these invoice files will be at the expense of the United States; and (2) TtEC will be provided copies of any documents that the United States elects to copy."

While the United States may be amenable to incurring some of the costs associated with scanning these hard copy invoice files, TtEC has also indicated that it may not be willing to allow the United States to conduct the scanning offsite. Instead, the United States would be required to hire a vendor to conduct onsite scanning at TtEC's offices in San Diego, California. To the extent the United States must retain a vendor in San Diego to conduct onsite scanning, that vendor would need to go through a lengthy process to be certified by the Department of Justice to handle the records given DOJ's information technology requirements. Further, requiring onsite scanning

would greatly increase costs and is unnecessary given that an offsite vendor could promptly return the bankers boxes to TtEC after scanning the records.

The United States therefore respectfully requests that, to the extent it is required to scan these hard copy invoice files, TtEC be required to mail the 54 bankers boxes to DOJ in Washington, D.C., and allow the DOJ's certified vendor to scan the hard copy invoice files (with the United States sharing the scanned records with TtEC or uploading them to the Magna repository) and return the 54 bankers boxes to TtEC in San Diego, California.

**2. The Tetra Tech Defendants' Position**

In response to RFP No. 25, TtEC has produced all invoices and all documents attached to and submitted with the invoices, all of which were maintained in electronic format. The only documents TtEC has not produced are additional backup documents for subcontractor equipment supplier invoices and expense reports beyond the invoice attachments that are stored as hard copies only in approximately 50 bankers boxes located in a storage facility in San Diego, CA. TtEC has offered to make available to the United States for inspection and/or copying the hard copy invoice files contained in these boxes, contingent upon (1) the U.S. bearing the costs of inspection; and (2) TtEC receiving copies of any copied documents. Allowing documents for inspection is fully compliant with the Federal Rules and the CMO. Fed. R. Civ. P. 34 ("The responding party *may* state that it will produce copies of documents or of electronically stored information *instead of* permitting inspection") (emphasis added).

In any event, none of these documents appears relevant in any way to the United States' claims, and the United States has never explained how these hard copy documents are relevant to their claims in ways not resolved by the already-produced invoices and backup documents, including the threshold issues of:

- why the backup documents attached to the invoices are insufficient (the backup documents attached to the invoices include all information required by the relevant contracts and there is no allegation that TtEC did not submit all required documentation);

- how the United States' claims relate to the invoice backup documents beyond the documents submitted with the invoices (the claims are based on soil and building sampling,[2] not subcontractor equipment supplier invoices, expense reports, etc.); and
- why backup documents for invoices not at issue in the United States' complaint are relevant in any way (neither the First Amended Complaint nor the proposed Second Amended Complaint allege that fraud was committed with respect to every invoice submitted by TtEC) .

However, notwithstanding the lack of relevance, and in recognition of the extreme burden and lack of corresponding benefit to the litigation, TtEC has offered to make available to the United States for inspection and/or copying the hard copy invoice files contained in approximately 50 bankers boxes located in a storage facility in San Diego, CA, contingent upon (1) the U.S. bearing the costs of inspection; and (2) TtEC receiving copies of any copied documents. TtEC is also willing to discuss potential off site copying options so long as the United States agrees that doing so is not a violation of any contract between TtEC and the United States or its agencies (including the Navy).

### C. *McLaughlin*, 3:14-cv-01509-JD

#### 1. The Shaw Defendants' Position

As referenced above, the Court dismissed *McLaughlin* on June 28, 2022. While the case was dismissed, the Court entered scheduling orders governing discovery in the related cases. *McLaughlin* was reinstated as to the Shaw Defendants on March 8, 2023. On April 29, 2023 and May 1, 2023, Relator served two sets of document requests, which necessitated the Shaw

[2] *See* Proposed Second Amended Complaint ¶¶ 120 ("Tetra Tech submitted claims for payment to the United States under each of the Relevant Contracts knowing that the claims were false or fraudulent because they included claims for: (a) soil surveys in which Tetra Tech misrepresented the source of the soil samples collected; (b) building surveys in which Tetra Tech falsified the data collected by radiation detection instruments; and/or (c) preparing status survey reports containing falsified results from soil and building surveys," none of which has anything to do with the types of information in the boxes of invoice backup materials.)

Defendants moving for an extension of the deadline to produce documents as it applies to this case up to and including October 30, 2023. (ECF No. 217). Relator did not file a response, and the motion is ripe for Court resolution. On July 18, 2023, however, Relator served yet another set of requests for production, his fourth set, to which the Shaw Defendants served responses on August 17, 2023. Relator has now served a total of 183 separate requests for production. The Court ordered the parties to all of the related cases to complete production of documents responsive to document production requests by June 16, 2023. The Shaw Defendants cannot complete document production when Relator continues to serve additional discovery requests. The Shaw Defendants seek clarification regarding whether this matter remains related to the other FCA Cases, and if so, whether the existing discovery deadlines apply to this matter, thereby precluding Relator from continuing to serve additional discovery requests. The Shaw Defendants have produced a large number of documents and are in the process of reviewing additional documents to determine if any additional responsive documents exist. In addition, the Shaw Defendants have served objections to discovery served on them, and the Shaw Defendants and Relator have continued to meet and confer regarding discovery in *McLaughlin*.

**2. The Relators' Position**

No position was received prior to filing this Report.

**D. *Building 606 Case,* 3:19-cv-07510-JD; October 31, 2022 Discovery Letter Brief filed by Kevin Abbey (ECF 165, 171)[3][Abbey's request to add Dan Batrack as a custodian]**

This dispute was resolved at the last Case Management Conference on December 1, 2022, and may be marked as resolved on the docket.

**E. *Residents' Case*, 3:19-cv-01417-JD; April 11, 2023 Discovery Letter Brief filed by Tetra Tech Defendants (ECF 206) [Tetra Tech Defendants' Request for Production of Dr. Dahlgren and Dr. Sumchai's Documents in Response to Subpoenas]**

---

[3] Also filed in *Five Point v. Tetra Tech*, 3:20-cv-01481-JD (ECF 110)

The Parties agree this dispute is resolved.

**F. *Residents' Case*, 3:19-cv-01417-JD; April 25, 2023 Discovery Letter Brief filed by Bayview Hunters Point Residents (ECF 207) [Plaintiffs' Request for Additional Six Months to Complete Plaintiff Fact Sheets]**

**1. Plaintiffs' Position**

On April 25, 2023, Plaintiffs requested that the PFS1 process be extended to October 31, 2023. As explained in ECF 207, the process of administering an 85-page PFS to more than 9500 plaintiffs proved more challenging than anticipated when the timeframes were initially negotiated. As of April 25, 2023, 2,650 PFS1 had been completed. We currently have more than 5,600 completed PFS1, of which 5,460 have been uploaded to Brown Greer. As discussed more fully in ECF 207, our biggest challenge has been the amount of time it takes to complete one PFS1. We have a support staff of more than 20 individuals working to contact Plaintiffs, set appointments, and assist them in filling out PFS1. We believe by October 31, 2023, we will have had sufficient time to contact, set appointments, and complete PFS1 for those Plaintiffs who want to continue with this action.

**2. The Tetra Tech Defendants' Position**

The Court should deny Plaintiffs' request for yet another extension of time to provide required threshold discovery. The Tetra Tech Defendants have worked with Plaintiffs to allow them ample time—in fact years—to complete basic discovery from each individual plaintiff. After numerous extensions, Plaintiffs have failed to provide this initial disclosure of information necessary to litigating the claims in this mass action.

On September 2, 2021, Plaintiffs entered into a written stipulation with the Tetra Tech Defendants setting an agreed-upon deadline for all Plaintiffs to serve complete Plaintiff Fact Sheets ("PFS1s")—i.e., fillable forms designed to facilitate the disclosure of certain basic information about each Plaintiff's claims. ECF No. 150. A week later, this Court entered that Stipulation as an Order. *Id.* Following years of written correspondence and telephonic meet-and-confers, and after executing several more stipulations to cumulatively extend the PFS1 deadlines by an additional year beyond the original deadline, the Court issued an order extending the final

deadline to April 30, 2023. ECF No. 184. Now, Plaintiffs seek to again delay the PFS1 process to which they stipulated—and that this Court entered as an order—on the grounds that (1) the PFS1 forms take longer to fill out than anticipated, (2) the Tetra Tech Defendants supposedly delayed in providing deficiency reports, and (3) the extension of the deadline will not prejudice the Tetra Tech Defendants. ECF No. 207. These arguments are a combination of wrong and irrelevant, and none provide "good cause" to forego enforcement of this Court's orders.

First, Plaintiffs' contention that the PFS1 forms take longer to fill out than anticipated is not credible. The timeframe for completing PFS1s was agreed-upon by Plaintiffs on two occasions, most recently in October 2022. ECF No. 184. By that time, all PFS1 questions had been finalized and Plaintiffs were well aware of the time and attention required to complete a PFS1—by then, Plaintiffs already had begun submitting PFSs. ECF No. 148; ECF No. 182. Second, Plaintiffs' allegation that the Tetra Tech Defendants "wait[ed] six months to provide … a deficiency report" for submitted PFS1s, supposedly "costing [Plaintiffs] significant time to find and fix the problem," is both false and irrelevant. ECF No. 207. The Tetra Tech Defendants served a proper notice of PFS1 deficiencies on November 9, 2022—prior to the stipulated close of the 120-day period for such notices, and well under the six months alleged by Plaintiffs. *See* ECF No. 150 at ¶ 18(c). In any event, Plaintiffs could have avoided spending time "sort[ing] through constant… deficiencies" had the forms been correctly submitted in the first instance. ECF No. 207. The Tetra Tech Defendants should not be prejudiced by Plaintiffs' failure to comply with the system they helped set up. Third, Plaintiffs' contention that the Tetra Tech Defendants will not be prejudiced by extension of the deadline is wrong. Given that Plaintiffs have now dropped their class allegations and will proceed on a mass tort basis, *see* ECF No. 223, the Tetra Tech Defendants' need for prompt discovery from each of the thousands of Plaintiffs in the case is more pressing than ever. In short, Plaintiffs have not shown good cause to forego this Court's orders and extend the PFS1 process.

**G. *Residents' Case*, 3:19-cv-01417-JD; May 4, 2023 Discovery Letter Brief filed by Tetra Tech EC, Inc. and Tetra Tech, Inc. Regarding Plaintiffs' Missing Written Discovery Responses (ECF 208) [The Tetra Tech**

**Defendants' Request for an Order to Compel Plaintiffs' Responses to 2 Interrogatories and 7 RFPs]**

**1. The Tetra Tech Defendants' Position**

On December 7, 2022, the Tetra Tech Defendants served 2 Interrogatories and 7 Requests for Production ("RFPs") to 220 Plaintiffs—approximately 2% of the 9,517 purportedly named Plaintiffs in the Residents' Case. The discovery requests were targeted, narrow, and highly relevant to the claims and defenses in this case. The 220 Plaintiffs who received Interrogatories and RFPs are a cohort of individuals who represented in PFS1s that they: (1) lived, worked, or went to school near HPNS; (2) experienced symptoms purportedly related to exposure to toxic substances from HPNS; and (3) have been diagnosed with an injury related to such exposure. Accordingly, the Interrogatories and RFPs sought information on relevant topics such as the bases for these Plaintiffs' beliefs that their symptoms and diagnoses are related to contamination at HPNS. ECF No. 208, Exs. 1 & 2.[4]

By March 1, 2023, the close of the extended response schedule agreed to by Defendants, 17 of the Plaintiffs had failed outright to respond to any Interrogatory or RFP. *See* ECF No. 208. Additionally, 3 Plaintiffs provided only blank responses to their Interrogatories. *Id.* To date, 8 of those 20 Plaintiffs have cured those deficiencies. The Tetra Tech Defendants therefore respectfully requests the Court order the remaining 12 Plaintiffs to properly respond to the Interrogatories and RFPs (including verifications of the responses to Interrogatories) within two weeks of this Court's order or to show cause why such Plaintiffs should not be dismissed from the case with prejudice. Fed. R. Civ. P. 37(b)(2)(A)(v).

**2. Plaintiffs Position**

Plaintiffs are working to complete the requested discovery.

---

[4] The RFPs, for instance, sought documents "RELATING TO YOUR allegations that YOUR 'fear … began back in 2004' RELATED TO TETRA TECH ENTITIES' 'digging and construction' as referred to in Paragraph 155 of YOUR COMPLAINT." ECF No 208, Ex. 1. The Interrogatories asked Plaintiffs to "describe all facts upon which YOU base your contention that the SYMPTOMS were caused by or can be attributed to YOUR exposure to toxic substances at or from HPNS." ECF No. 208, Ex. 2.

**H. *Residents' Case*, 3:19-cv-01417-JD; Request by the Tetra Tech Defendants to Order Plaintiffs to Produce Documents Provided to Plaintiffs' Counsel by Dr. Christopher Busby in Response to Tetra Tech EC, Inc.'s Subpoena [The Tetra Tech Defendants' Request for Production of Dr. Busby's Documents in Response to Subpoena]**

**1. The Tetra Tech Defendants' Position**

In December of 2022, the Tetra Tech Defendants issued document subpoenas to three key witnesses, Dr. Ahimsa Porter Sumchai, Dr. James Dahlgren, and Dr. Christopher Busby. All three of these doctors have been directly involved in this case. For example, the Sixth Amended Complaint specifically cites the work of Drs. Sumchai and Busby and relies upon "biomonitoring analysis" conducted by Drs. Sumchai and Dahlgren. *See* ECF No. 223 ¶¶ 124-25, 130, 138. On April 13, 2023, after four months of correspondence, including multiple telephonic meet-and-confers with Plaintiffs' counsel at the Bonner Firm, Plaintiffs produced responsive documents it had collected from Drs. Sumchai and Dahlgren. Neither Dr. Busby nor Plaintiffs produced any documents in response to the subpoena to Dr. Busby.

However, based on the Tetra Tech Defendants' review of the documents Plaintiffs did produce, it has become apparent that Dr. Busby provided documents to the Bonner Firm in response to his subpoena, and that the Bonner Firm is now withholding them. Specifically, the Tetra Tech Defendants identified a December 21, 2022 email from Dr. Busby to the Bonner Firm in which he stated the following: "here is my response to the subpoena on time. The papers I rely on which you 15aven't [sic] already got I will send separately when you tell me who to send them to."

On June 20, 2023, the Tetra Tech Defendants emailed the Bonner Firm requesting that it transmit Dr. Busby's "response to the subpoena" and the "papers" he stated he would "send separately." The Tetra Tech Defendants followed up on July 17, 2023 after hearing no response, but the Bonner Firm has still not responded.

Throughout the months-long process of attempting to achieve compliance with the doctors' subpoenas, Plaintiffs have been consistent in only one thing: creating a shell game in an attempt to delay, or entirely avoid, production of directly relevant documents upon which Plaintiffs'

allegations rely. Dr. Busby is directly involved in Plaintiffs' allegations. His written work on "Radiation-Induced Dementia" is cited in the Sixth Amended Complaint in support of Plaintiffs' request for payment for the "cost of medical monitoring" needed as a "consequence of plaintiff's toxic exposure." ECF No. 223 ¶ 125. Additionally, Plaintiffs' counsel stated in his Declaration in Support of Plaintiffs' Motion for Preliminary Approval of Class Settlement that he "consulted with experts in the matter of radiation, including Chris Busby, PhD" "prior to filing the class action." ECF No. 186. The delay and evasion with respect to this discovery prejudice the Tetra Tech Defendants' ability to obtain threshold discovery on material allegations made in the Complaint. Accordingly, the Tetra Tech Defendants respectfully requests that the Court order Plaintiffs' counsel to produce all documents responsive to the subpoena to Dr. Busby.

**2. Plaintiffs' Position**

Plaintiffs will produce the documents provided by Dr. Busby. The process has been slowed by the fact that many of the documents are included in individual emails that have to be individually printed. We will share what has been produced and will continue to disclose any additional documents as the documents are processed.

**I. *Residents' Case*, 3:19-cv-01417-JD; May 25 2023 Defendants Tetra Tech EC, Inc. and Tetra Tech, Inc.'s Notice of Names of Non-Responding Plaintiffs and Request for Dismissal Without Prejudice (ECF 209)**

**1. The Tetra Tech Defendants' Position**

On September 9, 2021, this Court entered an order providing that any Plaintiff who fails to serve a completed PFS1 by the agreed-upon deadline, absent good cause, "will be dismissed without prejudice." PFS1 Order (ECF No. 150) ¶¶ 11, 14, 18. As explained more fully in the Tetra Tech Defendants' position statement herein concerning Plaintiffs' request for an additional six months to complete PFS1s (ECF No. 207), the Notice of Names of Non-Responding Plaintiffs and Request for Dismissal Without Prejudice (ECF No. 209), and the Reply to Plaintiffs' Opposition to Defendant's Notice of Names of Non-Responding Plaintiffs and Request for Dismissal Without Prejudice (ECF No. 214), Plaintiffs have not shown good cause to forego this order of the Court.

In the Notice of Names of Non-Responding Plaintiffs, the Tetra Tech Defendants identified 6,252 Plaintiffs who, as of May 25, 2023, had failed to submit a timely PFS1. Twenty-one days later, on June 14, 2023, the Tetra Tech Defendants submitted a Proposed Order for Dismissal of Non-Responding Plaintiffs Without Prejudice (ECF No. 213) identifying, in Exhibit A, 6,010 Plaintiffs from whom the Tetra Tech Defendants still have not received a PFS1 as of August 30, 2023. Despite Plaintiffs' contention that they have completed additional PFS1s, *no* additional PFS1s have been made available on the PFS platform or otherwise provided to the Tetra Tech Defendants. As a result, as of the filing of this Joint Status Report, the current list of 6,010 Plaintiffs who have not submitted PFS1s remains accurate. Pursuant to ¶ 18(a) of the Court's PFS1 Order, those 6,010 Plaintiffs should be dismissed without prejudice.

**2. Plaintiffs' Position**

Plaintiffs' position is set out more fully in ECF 212. In their notice (ECF 209), the Tetra Tech defendants argued that 6,252 Plaintiffs are "still-deficient" in that they have either not completed a PFS1 or have completed a PFS1 that Tetra Tech deemed deficient. To their notice, the Tetra Tech defendants attached a 146-page Exhibit A with the names of the individuals Tetra Tech asserts have not completed a PFS1.

Setting aside the logistical issues raised in Plaintiffs' request for additional time (ECF 207) and Plaintiffs' opposition to Tetra Tech's notice (ECF 212), Plaintiffs currently have completed more than 5,600 PFS1, 4,895 of which are deemed complete by Brown Greer. Since there has been no order dismissing any Plaintiffs for failing to complete a PFS1, all 5,600 PFS1 are timely. Accordingly, the 146-page Exhibit A is outdated because it includes individuals who have since completed a PFS1.

The PFS1 order (ECF 150) contemplates a multistep process before dismissal with prejudice. First, Defendants provide notification of non-responding plaintiffs, triggering a 21-day window to cure the deficiency. Second, the Defendants send notice to the Court and request the Court dismiss the identified Plaintiffs. Those who have failed to cure will be dismissed without prejudice unless, within 14 days of the notice, the Plaintiff either submits a PFS1 or an opposition

showing good cause. If the Court dismisses Plaintiffs without prejudice, the Plaintiff shall have 30 days from entry of dismissal without prejudice to move the Court to set aside the dismissal.

Defendants submitted their notice on May 25, 2023 (ECF 209). Plaintiffs opposed on June 6, 2023 (ECF 212). The Court has issued no order dismissing any Plaintiffs without prejudice.

The process set out in ECF 150, does not fit well with the PFS process because the number of PFS1 is constantly changing as Plaintiffs complete their PFS1. Plaintiffs are actively setting appointments and working with Plaintiffs to complete their PFS1. Plaintiffs met and conferred over the phone with Tetra Tech's counsel to propose a procedure for winding down the PFS1 process. Plaintiffs anticipate four categories of Plaintiffs: 1) Plaintiffs with completed PFS1 that are deemed by Brown Greer not deficient; 2) Plaintiffs with completed PFS1 that are deemed by Brown Greer to be deficient; 3) Plaintiffs with whom contact has been made but a PFS1 has not been completed due to scheduling conflicts; 4) Plaintiffs who have not responded to our numerous attempts to contact them or have informed us that they no longer wish to maintain an action against Tetra Tech.

Assuming the Court extends the time to complete the PFS1 process to October 31, 2023, as requested, Plaintiffs propose that the parties meet and confer to create two lists of Plaintiffs subject to dismissal. Group A will include the names of individuals who have not responded to multiple requests or have affirmatively indicated no longer want to move forward with this action. Plaintiffs will not have a good-faith reason to oppose this motion. Group B will include Plaintiffs who are in the process of scheduling an appointment to complete the PFS1. For these plaintiffs, an attempt will be made to argue good cause for their failure to complete a PFS1. However, based on the current responses, Plaintiffs anticipate that by October 31, 2023, this will be a small number of individuals. Lastly, Plaintiffs propose addressing individuals who have completed PFS1, which Tetra Tech deems to be deficient, in a separate process after the dismissals have been ordered. Plaintiffs believe this process will reduce any requirement that the Court parse through hundreds of pages of names comparing those the Plaintiffs say have completed a PFS1 with those the Defendants say have not.

### J. *Residents' Case*, 3:19-cv-01417-JD; June 6, 2023 Plaintiffs' Opposition to Defendants Tetra Tech EC, Inc. and Tetra Tech, Inc.'s Notice of Names of Non-Responding Plaintiffs and Request for Dismissal Without Prejudice (ECF 212)

#### 1. Plaintiffs' Position

As set forth above, Plaintiffs request an extension of time to complete the PFS1 process to October 31, 2023. Further, As set forth above, the list included in Defendants' notice, ECF 209, is outdated since it includes names of Plaintiffs who have completed PFS1s. Finally, as set forth above, Plaintiffs propose a procedure for winding down the PFS1 process as set out above.

#### 2. The Tetra Tech Defendants' Position

Exhibit A to the Tetra Tech Defendants' Proposed Order for Dismissal of Non-Responding Plaintiffs Without Prejudice (ECF No. 213) identifies 6,010 Plaintiffs from whom the Tetra Tech Defendants have not received a response to PFS1 of any kind to date. For the reasons stated above, those Plaintiffs should be dismissed pursuant to ¶ 18(a) of the PFS1 Order (ECF No. 150).

### K. *Five Point v. U.S.*, 3:20-cv-01480-JD; July 10, 2023 Discovery Letter Brief filed by Five Point (ECF 147) [Five Point's Request for Production to the United States for Communications Between Litigation Counsel for the United States and Outside Litigation Counsel for the Tetra Tech Defendants]

#### 1. Five Point's Position

The United States is prosecuting an action *against* Tetra Tech for its submission of false claims to the Navy for fraudulent testing and reporting at the Shipyard, while simultaneously working *with* Tetra Tech to defend *against* Five Point's claims arising from the same fraud. Five Point filed a letter brief to compel the United States to produce documents and communications exchanged with Tetra Tech, including each party's legal representatives, concerning Hunters Point, including the Actions, and any actual or proposed settlement. The United States is withholding those communications, claiming they are privileged and not relevant. The United States' refusal to comply with Five Point's discovery requests on privilege grounds is implausible given the United States and Tetra Tech are direct adversaries in litigation and do not share an attorney-client privilege, work product protection, or any other privilege or protection. The

requests also seek relevant information regarding the relationship between the United States and Tetra Tech that is central to Five Point's claims, as well as the United States' efforts to downplay the extent of Tetra Tech's fraud on the one hand while prosecuting Tetra Tech on the other, including through a recently proposed Second Amended Complaint that adds details of a claim for common law fraud.

The Court has not requested a response brief from the United States. Tetra Tech has requested an opportunity to respond to Five Point's letter brief, even though the requests were propounded on the United States, which underscores the unique and problematic, and highly relevant, relationship between those adversaries who are co-defendants in the Commercial Cases.

**2. The United States' Position**

Five Point is demanding that government attorneys be made document custodians, including United States Department of Justice Trial Attorneys who are counsel of record in this case. Specifically, Five Point's Fourth Set of RFPs (Nos.197-205) seeks production of communications between government attorneys and counsel for Tetra Tech or any subcontractors. This demand is inappropriate for three reasons.

First, the demand seeks irrelevant information. Five Point seeks communications from government attorneys who have no personal knowledge of the underlying facts at Hunters Point Naval Shipyard and only a speculative nexus to any issues raised in this Federal Tort Claims Act case. Five Point's tort claims pertain substantively to the United States' allegedly negligent hiring and supervision of Tetra Tech. These allegations concern environmental remediation at Hunters Point Naval Shipyard, not communications between counsel for the United States and Tetra Tech or its subcontractors in subsequent litigation. Indeed, Five Point's reference in its letter brief to the relevance of the criminal prosecution of former Tetra Tech employees raises no coherent nexus of any kind to its tort allegations.

Second, the demand is not proportional to the needs of the case. The United States has coordinated a document production comprising over 35 million document images obtained from 85 document custodians from the Navy, Environmental Protection Agency, and Nuclear

Regulatory Commission. As the Court stated at the status conference on December 1, 2022, even 8 million document images "is just way overboard" (12/01/2022 Transcript, 26:02-03). The Court also ordered the parties to "reduce the burden on the government to produce materials that are not proportionate to the needs of the case." Case 3:20-cv-01480-JD, ECF 139, *Stipulation and Order Regarding Discovery Protocol and Case Management Order Number One*, 15:09-10. Moreover, if government attorneys were made document custodians, there would be a significant burden on the United States to review any document yields for potentially privileged communications. A search of attorney files for communications to/from Tetra Tech predictably would capture email chains addressing underlying exchanges with Tetra Tech that did not include counsel. In fact, the United States already has encountered this phenomenon repeatedly for documents obtained from non-attorney custodians in its privilege review for its 35 million document image production. Any third-party emails that were forwarded to agency or Department of Justice counsel would need to be searched and reviewed.

Third, Five Point's demand for government attorney files is retaliatory. Counsel for Five Point made clear in the meet-and-confer process that it analogizes its demand for government attorney records to the United States' RFPs Nos. 75-81 directed to Five Point. In those RFPs, however, the United States only asked Five Point to produce all non-privileged documents related to certain lawsuits filed against it, and financial settlements thereof, because Five Point has cited the costs associated with those lawsuits as a component of its claimed damages. (FAC ¶ 449; Suppl. Initial Disclosures at 36). In contrast, the costs associated with the United States' ongoing suit against Tetra Tech, or any potential settlement of that suit, are not at issue here. And the United States specifically agreed counsel for Five Point would not be custodians for those RFPs, and never sought attorney custodians for any of its RFPs directed to Five Point.

**3. The Tetra Tech Defendants' Position**

The Tetra Tech Defendants request that this Court deny Five Point's request to compel the United States to produce communications between litigation counsel for the United States and

outside litigation counsel for the Tetra Tech Defendants.[5] The documents Five Point has requested from the United States are irrelevant to Five Point's case. The type of information Five Point claims would be revealed by these documents (particularly "the United States' failure to exert appropriate oversight of Tetra Tech") would not be demonstrated by communications between the parties' litigation counsel during the course of the litigation. Five Point claims that the documents would also provide evidence of "the United States' efforts to downplay the extent of Tetra Tech's fraud on the one hand while prosecuting them on the other." This is not a claim in Five Point's case. Documents related to the United States' litigation strategy are, in addition to being privileged, completely irrelevant to the events underlying Five Point's claims. The Tetra Tech Defendants also joins in the United States' common interest argument.

### L. *Five Point v. Tetra Tech*, 3:20-cv-01481-JD; February 27, 2023 Discovery Letter Brief filed by the Tetra Tech Defendants (ECF 128, 130, 131) [The Tetra Tech Defendants' Request to Compel Five Point's Response to its Request for Production No. 38]

#### 1. The Tetra Tech Defendants' Position

As explained more fully in ECF 128, the Tetra Tech Defendants request that the Court compel Five Point to produce documents responsive to one Request for Production, RFP No. 38: "ALL COMMUNICATIONS between [Five Point], including [Five Point's] legal representatives, and the PARCEL A PLAINTIFFS, including their legal representatives, RELATING TO HUNTERS POINT." Documents showing statements from Five Point to the Parcel A Plaintiffs – homebuyers in the Shipyard – are statements by Five Point to the relevant market. To the extent those statements are based on alleged representations from the Tetra Tech Defendants (or to the extent no such documents exist), the communications are directly relevant for assessing Five Point's purported reliance on the Tetra Tech Defendants' alleged false representations. *See Sung v. Mission Valley Renewable Energy, LLC*, 2013 WL 4523561, at *5 (E.D. Wash. Aug. 27, 2013) (evidence demonstrating plaintiff's reliance on allegedly false statements – necessary to prevail on

[5] To the extent Five Point's Requests seek communications between the United States and inhouse personnel at Tetra Tech Inc. and TtEC, the Tetra Tech Defendants do not object to this RFP.

its claim – was "clearly relevant"). The requested communications are also relevant to assess the extent of Five Point's knowledge concerning potential delays in development and whether any resulting economic harm can be attributed to the Tetra Tech Defendants, essential elements of Five Point's claims for negligent and intentional interference with prospective economic advantage.

Finally, Five Point's settlement in *Pennington* does not negate the relevance of these documents. In the first instance, as discussed above, the communications are relevant to the defense of Five Point's claims for fraud and negligent and intentional interference with prospective economic advantage. Five Point also continues to pursue an equitable indemnification and contribution claim against the Tetra Tech Defendants for Five Point's costs incurred in *Pennington*. ECF No. 1, Compl. ¶ 115. Thus, communications between Five Point's counsel (Alston & Bird LLP) and Pennington's counsel (Cotchett, Pitre & McCarthy, LLP) relating to Hunters Point and the Hunters Point litigations are directly probative and must be produced.[6]

**2. Five Point's Position**

Tetra Tech requests every communication exchanged between Five Point, including its counsel, and Plaintiffs in the Parcel A Cases, including their counsel, "relating to" the broad subject of "Hunters Point" over an undefined period. This "catchall" request is overbroad on its face because it is not tethered to any specific issue in the case. The broad subject of Hunters Point is not a *specific* issue in this case. The mere fact that a communication is "related to Hunters Point" does not mean it is relevant to Five Point's claims. As detailed in Five Point's response letter brief, district courts routinely reject similar "catchall" requests. The request is also inappropriate and unduly burdensome because it specifically requests privileged communications between counsel for Five Point and Plaintiffs in the Parcel A Cases who executed a common interest agreement on August 10, 2020. The request also seeks documents protected by the mediation privilege. Finally, Tetra Tech refused, notwithstanding several offers, to meet and

[6] To the extent there were communications between counsel in relation to the parties' mediation, The Tetra Tech Defendants do not dispute that such communications are protected from disclosure and can be withheld and logged.

confer with Five Point by telephone prior to filings its letter brief, in contravention of the Court's Standing Order and Civil Local Rules

**M. *Five Point v. Tetra Tech*, 3:20-cv-01481-JD; May 2, 2023 Discovery Letter Brief filed by CP Development Co., LLC, Five Point Holdings, LLC (ECF 132) [Five Point's Request to Add Additional Email Domain to Search Strings]**

**1. Five Point's Position**

Tetra Tech has refused to include the Navy's email domain ("@navy.mil") in their proposed search strings to identify documents responsive to ten requests for production of documents, which specifically seek communications between Tetra Tech and the Navy regarding key witnesses like Stephen Rolfe and Justin Hubbard. In refusing to incorporate the Navy's domain into these search strings, Tetra Tech has prevented the disclosure of the very records these requests seek. There is no justification for Tetra Tech to withhold these records, which are clearly relevant to Five Point's claims. Moreover, Tetra Tech's refusal to incorporate the Navy's email domain to capture these records has unduly prejudiced Five Point since Tetra Tech has noticed the depositions of Navy witnesses to occur this Fall. The Court has not requested a response brief from Tetra Tech.

**2. The Tetra Tech Defendants' Position**

Five Point's late request to add a new email domain name to document searches should be rejected. The Tetra Tech Defendants' existing search strings already encompass all reasonably relevant, probative documents responsive to Five Point's RFPs, and were developed cooperatively with all counsel (including counsel for Five Point) over many separate meet and confer letters, emails, and conferences. The Tetra Tech Defendants took an incredibly broad approach to collection and production, producing over four million pages in these litigations, plus significant volumes of non-paginatable data, all of which Five Point has access to. Further modification of the Tetra Tech Defendants' search terms after the close of document discovery is unnecessary and would cause the Tetra Tech Defendants the undue burden of reviewing irrelevant and non-probative documents. The Tetra Tech Defendants have done its best to accommodate Five Point's

exorbitant demands and unwieldy approach to developing search strings, including by running an additional 63 amended and/or new search terms in response to Five Point's complaints that 219 of its RFPs were not adequately addressed by the previously agreed upon terms (a concern raised just two months prior to the production deadline). If these amendments were adopted, the Tetra Tech Defendants stand to suffer an increasingly undue burden of reviewing up to tens of thousands of nonresponsive and irrelevant documents after the document deadline production has passed.

Moreover, the RFPs at issue in Five Point's letter brief are adequately addressed by existing search strings. Five Point argues it needs these added domain names to "seek communications between the Tetra Tech Defendants and the United States (including the Navy) regarding key witnesses such as Stephen Rolfe, Justin Hubbard, Dennis McWade, and Jane Taylor." ECF 132 at 2. The Tetra Tech Defendants have designed its search strings to broadly encompass relevant documents that (1) were exchanged between the Tetra Tech Defendants and the Navy (regardless of whether they mention the specified individuals), and (2) that concern the specified individuals (regardless of whether they were exchanged with the Navy). Thus, the Tetra Tech Defendants' search strings need not include the specified individuals' names and the "@navy.mil" domain in order to capture responsive documents. In fact, the Tetra Tech Defendants have already produced 19,308 emails with the "@navy.mil" domain based on the parties' agreed upon search terms.

### N. *CPHP*, 3:20-cv-01485-JD; March 17, 2023 Discovery Letter Brief regarding Interrogatories filed by the Tetra Tech Defendants (ECF 195, 198) [The Tetra Tech Defendants' Request to Compel Lennar's Response to Interrogatories 4, 5, 6, 9, 10, and 11]

#### 1. The Tetra Tech Defendants' Position

The Tetra Tech Defendants request that the Court order Lennar to respond to Interrogatories 4, 5, 6, 9, 10, and 11. These Interrogatories ask Lennar to support specific allegations contained in its First Amended Complaint. Specifically:

- Interrogatory 4 requests: "State all facts that demonstrate that YOU have suffered 'financial and reputational harm' from 'the stigma now attached to the entire

Shipyard from the botched cleanup' due to TETRA TECH's alleged fraud, as alleged in Paragraph 11 of the COMPLAINT."

- Interrogatory 5 requests: "State all facts that demonstrate that the value of the property at HUNTERS POINT has been diminished as a result of TETRA TECH's alleged fraud and negligence, as alleged in Paragraph 283 of the COMPLAINT."
- Interrogatory 6 requests: "State all facts that demonstrate that YOU did not know of the alleged fraudulent activities underlying YOUR claims until May 2, 2018, when the plea agreements of Justin Hubbard and Stephen Rolfe were unsealed, as alleged in Paragraph 65 of the COMPLAINT."
- Interrogatory 9 requests: "State all facts that demonstrate that the 'fixed-price contracts with the Navy incentivized TETRA TECH to maximize profits by cutting corners and completing tasks as quickly as possible,' as alleged in Paragraph 41 of the COMPLAINT."
- Interrogatory 10 requests: "State all facts that demonstrate that TETRA TECH knew that representations about no further actions being required for Parcels UC-1 and UC-2 were 'incomplete, misleading, and false,' as alleged in Paragraph 47 of the COMPLAINT."
- Interrogatory 11 requests: "State all facts that demonstrate that TETRA TECH knew that representations that Parcel D-2 was ready for 'unconditional, unrestricted radiological free release' were 'incomplete, misleading, and false' as alleged in Paragraphs 50 and 51 of the COMPLAINT.

Lennar objected and refused to substantively respond to the Requests on the ground that they are premature "contention" interrogatories. Regardless of how these Interrogatories are labeled, they are not premature, and Lennar is required to respond. *See, e.g., National Academy of Recording Arts & Sciences, Inc. v. On Point Events, LP*, 256 R.F.D. 678, 682 (C.D. Cal. 2009) ("Requiring a [party] to answer a contention interrogatory…is consistent with Rule 11…which requires parties have some factual basis for their claims and allegations."). This is even more true

now that document discovery is complete, but regardless, discovery need not be complete before contention interrogatories are served. *See U.S. ex rel. O'Connell*, 245 F.RD. at 650 ("Rule 11 requires plaintiffs to have a basis for their allegations in the complaint, and contention interrogatories seek information about that basis; thus, an objection that discovery has only just begun makes no sense at all.").

Moreover, the answers are needed to focus the case. Responses to contention interrogatories are appropriate because they will clarify the issues presented in Lennar's complaint by identifying the specific bases for the allegations (or the lack thereof). *In re Convergent-Technologies Sec. Litig.*, 108 F.R.D. at 338-39 (holding that contention interrogatory responses are appropriate where they would contribute meaningfully to clarifying the issues in the case). For example, Interrogatory No. 4 requests: "State all facts that demonstrate that YOU have suffered 'financial and reputational harm' from 'the stigma now attached to the entire Shipyard from the botched cleanup' due to TETRA TECH's alleged fraud, as alleged in Paragraph 11 of the COMPLAINT." Lennar cannot simply point the Tetra Tech Defendants to the Complaint and must instead respond with the facts currently known. If additional facts are learned later, Lennar can supplement its responses.

**2. CPHP's Position**

Lennar's position is set forth in its Letter Brief (ECF 198). Tetra Tech's claim that Lennar has refused to respond to the Interrogatories at issue is wrong—Lennar has answered them and has promised to supplement its responses as discovery progress. Lennar's responses identified all known facts supporting Lennar's allegations—which are also detailed in Lennar's Amended Complaint across eighty-nine pages and 399 paragraphs. This is sufficient for this stage of the case. *See In re Convergent-Techs. Sec. Litig.*, 108 F.R.D. 328, 337 (N.D. Cal. 1985) (early contention interrogatories inappropriate where the complaint "presents a relatively detailed specification of the real world events giving rise to it, and proceeds on relatively well established legal theories."); *Grouse River Outfitters Ltd. V. Netsuite, Inc.*, 2017 WL 1330202, at *2 (N.D. Cal. Apr. 6, 2017) ("The proposed interrogatories—at this stage of the case—effectively ask the

plaintiff to repeat its allegations. There is little value in that."); *In re eBay Seller Antitrust Litig.*, 2008 WL 5212170, at *2 (N.D. Cal. Dec. 2008) ("[i]t is not apparent how these broad interrogatories, particularly those that track plaintiffs' complaint, will serve to clarify the issues or narrow the scope of the litigation" early in the case.). Although the parties recently finished exchanging productions, there are millions of pages of documents to review and most depositions have yet to occur, including all of Tetra Tech's witnesses. Lennar expects that this discovery may require supplementing its responses. And as for Interrogatory No. 4, as Lennar explained in its Letter Brief, it is premature to require a more detailed response at this time. Lennar has provided the damages information it currently has and will supplement the response during expert discovery, which has not yet begun.

## V. OTHER REMAINING ISSUES

### A. Five Point

The Navy's Spoilation of Evidence. On March 3, 2023, Five Point learned the Navy had deleted the email account for a key Navy witness – Shirley Ng, Resident Officer in Charge of Construction at the Shipyard – even though the United States previously proposed including Ms. Ng as a custodian because she possessed relevant records. The United States also informed Five Point that Ms. Ng never received a litigation hold. The United States failed to fulfill its obligations under Fed. R. Civ. P. 37(e) to preserve evidence relevant to this litigation. Such spoilation raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it. *Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 806 (9th Cir. 1982).

Five Point propounded limited discovery on the United States regarding its destruction of Ms. Ng's files. The United States has not complied with these requests. For example, the United States refused to produce a list of custodians who received a litigation hold notice or unredacted copies of its litigation holds notices, even though such notices are discoverable where, as here, spoilation is at issue. *Cannata v. Wyndham Worldwide Corp.*, No. 2:10-cv-00068-PMP-LRL, 2011 WL 3495987, at *2 (D. Nev. Aug. 10, 2011). The United States produced Ms. Ng's

custodial file, which only included 54 emails sent "from" Ms. Ng, in the 2010-2011 and 2018-2019 timeframe (i.e., with a 7-year gap). Five Point is engaged in ongoing meet and confer efforts with the United States regarding the Navy's spoilation of evidence.

Subpoena to Singer Associates. On July 27, 2022, Five Point served a subpoena on Singer Associates ("Singer"), Tetra Tech's public relations consultant, who made dozens of statements and comments regarding Tetra Tech's work at the Shipyard and the underlying litigation. Tetra Tech has withheld several documents on the grounds of privilege because it contends Tetra Tech's General Counsel hired Singer at the onset of litigation. On May 31, 2023, Five Point served a second subpoena on Singer requesting its engagement letter with Tetra Tech, including drafts and modifications. Tetra Tech produced its only engagement letter with Singer, which remarkably makes no mention of confidentiality, much less privilege, or that Singer's services were necessary to enable its General Counsel to provide legal advice to the organization. Singer's privilege log is also deficient; although Tetra Tech committed to updating the privilege log by the production deadline "if necessary," it did not do so, apparently not finding it necessary. Five Point disagrees. Five Point has engaged in meet and confer efforts with Tetra Tech regarding this dispute for almost one year. If the parties are unable to resolve this dispute, Five Point will have no choice but to file a letter brief.

**B. Tetra Tech Defendants' Response to the Subpoena to Singer Associates**

The Tetra Tech Defendants agree that Five Point has not completed its meet and confer obligations on this issue. As Five Point added this language mere hours before the filing deadline, concedes that the parties are still meeting and conferring, and admits that no discovery letter brief has been filed, Tetra Tech will reserve further response for future motion practice should the meet and confer process fail to resolve the dispute.

**C. United States Position Regarding Documents of Shirley Ng**

On March 3, 2023, the United States disclosed to Five Point that the Navy no longer possessed the email account of one of its former employees, Shirley Ng, who previously worked as a Resident Officer in Charge of Construction at Hunters Point and had been named as a

document custodian in this litigation, because Ms. Ng retired from the Navy in January of 2020 before Five Point filed suit against the United States. Five Point has asserted that the loss of Ms. Ng's email account constitutes spoliation of evidence and has served discovery on the United States seeking information and documents related to the Navy's litigation hold and preservation efforts. The United States has responded to those discovery requests, including by producing redacted copies of the Navy's litigation hold notices and providing documents from 3 additional custodians who worked alongside Ms. Ng. To this point, Five Point has not continued the meet-and-confer process nor sought court intervention. The United States therefore respectfully contends that this matter is not ripe for resolution or discussion at the upcoming status conference.

Respectfully submitted,

DATED: August 30, 2023

COTCHETT, PITRE & McCARTHY, LLP

By: */s/ Anne Marie Murphy*
JOSEPH W. COTCHETT (SBN 36324)
ANNE MARIE MURPHY (SBN 202540)
DONALD J. MAGILLIGAN (SBN 257714)
*Attorneys for PENNINGTON PLAINTIFFS*

DATED: August 30, 2023

WALKUP, MELODIA, KELLY AND SCHOENBERGER

By: */s/ Khaldoun A. Baghadi*
KHALDOUN A. BAGHADI (SBN 190111)
SARA M. PETERS (SBN 260610)
JADE SMITH-WILLIAMS (SBN 318915)
*Attorneys for PLAINTIFFS KEVIN ABBEY, ET AL.*

DATED: August 30, 2023

BONNER & BONNER

By: */s/ Charles A. Bonner*

CHARLES A. BONNER (SBN 85413)
A. CABRAL BONNER (SBN 247528)
*Attorneys for PLAINTIFFS BAYVIEW HUNTERS POINT RESIDENTS*

DATED: August 30, 2023

LAW OFFICE OF DAVID ANTON

By: /s/ [7]

DAVID C. ANTON (SBN 95852)
*Attorneys for RELATORS*

DATED: August 30, 2023

O'MELVENY & MYERS LLP

By: */s/ Madhu R. Pocha*

DANIEL M. PETROCELLI (SBN 97802)
DAVID J. MARROSO (SBN 211655)
GEOFFREY H. YOST (SBN 159687)
MADHU R. POCHA (SBN 260997)
*Attorneys for LENNAR CORP.; HPS DEVELOPMENT CO., L.P.; HPS1 BLOCK 50 LLC; HPS1 BLOCK 51 LLC; HPS1 BLOCK 53 LLC; AND HPS1 BLOCK 54 LLC*

DATED: August 30, 2023

ALSTON & BIRD

By: */s/ Gregory Berlin*

JEFFREY D. DINTZER (SBN 139056)
MATTHEW C. WICKERSHAM (SBN 241733)
*Attorneys for FIVE POINT HOLDINGS, LLC, CP DEVELOPMENT CO., LLC, AND EMILE HADDAD*

DATED: August 30, 2023

LAW OFFICES OF RICHARD M. STEINGARD

By: */s/ Richard M. Steingard*

RICHARD M. STEINGARD (SBN 106374)
*Attorneys for DEFENDANT BILL DOUGHERTY*

---

[7] No response was received prior to filing; the Parties are unaware of any objections or unincluded additions to the Report by this Party.

DATED: August 30, 2023

WILMERHALE LLP

By: */s/ Christopher A. Rheinheimer*

DAVINA PUJARI
CHRISTOPHER A. RHEINHEIMER
CHRISTOPHER T. CASAMASSIMA
SAMUEL C. LEIFER
*Attorneys for TETRA TECH, INC., TETRA TECH EC, INC., ANDREW BOLT*

DATED: August 30, 2023

BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Kimberly B. Martin*

KIMBERLY B. MARTIN (pro hac vice)
KIMBERLY M. INGRAM (SBN 305497)
LYNDSAY E. MEDLIN (pro hac vice)
*Attorneys for DEFENDANTS SHAW ENVIRONMENTAL & INFRASTRUCTURE, INC., CHICAGO BRIDGE & IRON COMPANY N.V., APTIM CORPORATION, AND APTIM FEDERAL SERVICES, LLC*

DATED: August 30, 2023

BORDIN SEMMER LLP

By: */s/ Bryan C. Swaim*

BRYAN C. SWAIM, SBN 289729
bswaim@bordinsemmer.com
*Attorneys for DEFENDANTS RADIOLOGICAL SURVEY & REMEDIATION SERVICES, LLC, DARYL DELONG, AND BRIAN HENDERSON*

DATED: August 30, 2023

TROPEA MCMILLAN, LLP

By: */s/ Santino M. Tropea*

SANTINO M. TROPEA (SBN 249215)
*Attorneys for DEFENDANT IO ENVIRONMENTAL & INFRASTRUCTURE, INC.*

DATED: August 30, 2023

ISMAIL J. RAMSEY
United States Attorney

By: */s/ Michael T. Pyle*

MICHAEL T. PYLE (SBN 172954)
SAVITH IYENGAR
Assistant United States Attorneys
450 Golden Gate Avenue
Ninth Floor, Box 36055
San Francisco, CA 94102
Tel: (415) 436-7018

JAMIE ANN YAVELBERG
PATRICK KLEIN
ROBERT CHANDLER
JONATHAN K. HOERNER
JOHN F. SCHIFALACQUA
450 Golden Gate Avenue
Ninth Floor, Box 36055
San Francisco, CA 94102
Tel: (415) 436-7018
*Attorneys for Plaintiff UNITED STATES OF AMERICA*

DATED: August 30, 2023

UNITED STATES OF AMERICA, CIVIL DIVISION/TORTS BRANCH

By: */s/ Michael Williams*

CAROLINE STANTON
MICHAEL WILLIAMS
ALBERT LAI
ROSEMARY YOGIAVEETIL
KENNETH A. PILGRIM
CINDY HURT
Trial Attorneys
Civil Division, Environmental Torts
1100 L Street NW
Third Floor
Washington, DC 20005
Telephone: (202) 307-0554
*Attorneys for Defendant UNITED STATES OF AMERICA*

DATED: August 30, 2023

MUNGER, TOLLES & OLSON LLP

By: */s/ Blanca F. Young*
BLANCA F. YOUNG
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

*Attorneys for Defendant CH2M Hill, Inc.*

DATED: August 30, 2023

ZELMS ERLICH & MACK

By: */s/ Rinat K. Erlich*
RINAT K. ERLICH
20920 Warner Center Lane, Suite B
Woodland Hills, CA 91367
Telephone: (213) 347-9139
Facsimile: (818) 999-9155

*Attorneys for Defendant SC&A, INC*

DATED: August 30, 2023

EDLIN GALLAGHER HUIE + BLUM

By: */s/ Farheena A. Habib*
ERIN K. POPPLER
FARHEENA A. HABIB
500 Washington Street, Suite 700
San Francisco, CA 94111
Telephone: (628) 207-1491
Facsimile: (415) 397-1339

*Attorneys for Defendant Perma-Fix Environmental Services, Inc.*

DATED: August 30, 2023

FURUKAWA CASTLES LLP

By: */s/ Brent F. Basilico*
JAMES CASTLES
BRENT F. BASILICO
800 Airport Boulevard, Suite 504
Burlingame, CA 94010
Telephone: (415) 632-1584
Facsimile: (415) 510-2240

*Attorneys for Defendant Cabrera Services, Inc.*

DATED: August 30, 2023

DAVIS WRIGHT TREMAINE LLP

By: */s/ Jean Fundakowski*
JOSEPH E. ADDIEGO, III
JEAN FUNDAKOWSKI
50 California, 23rd Floor
San Francisco, CA 94111
Telephone: (415) 276-6500
Facsimile: (415) 276-6599

*Attorneys for Defendant Battelle Memorial Institute*

**Civil Local Rule 5-1(i)(3) Attestation**

Pursuant to Local Rule 5-1(i)(3), I, Christopher A. Rheinheimer, the ECF filer of this document, hereby attest that I obtained concurrence in the filing of this document from each of the other signatories.

Date: August 30, 2023

By: */s/ Christopher A. Rheinheimer*
Christopher A. Rheinheimer